**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY and SUBSIDIARIES** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 06-489 T** |
| **v.** | ) | **The Honorable Eric G. Bruggink** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND OPPOSITION TO DEFENDANT'S MOTION**

Of Counsel:

Laurence A. Hoch
GENERAL ELECTRIC COMPANY
GE Corporate Taxes
12 Corporate Woods Blvd., 3rd Fl.
Albany, NY 12211
(518) 433-4359

James V. Heffernan
Mary E. Monahan
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-0100

March 10, 2008

Jerome B. Libin
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-0100
Fax (202) 637-3593

Counsel for Plaintiff
General Electric Company and Subsidiaries

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

I. MOTION TO STRIKE -- DEFENDANT'S 12(b)(6) MOTION TO DISMISS IS UNTIMELY ........ 1

II. PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS -- PLAINTIFF'S COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........ 2

A. The Applicable Legal Standard ........ 2

B. The Complaint States a Claim Upon Which Relief Can Be Granted ........ 2

1. Section 6621(d) ........ 5

2. The Application of Section 6621(d) is Mandatory ........ 7

3. The Complaint States A Claim For the Application of Retroactive Interest Netting ........ 8

C. Defendant's Motion Fails to Demonstrate That Defendant is Entitled to Judgment as a Matter of Law ........ 11

1. Section 6402(a) ........ 12

2. The Decision to Credit is Reviewable ........ 13

3. Crediting Under Section 6402(a) May be Limited by Other Provisions of the Code ........ 14

4. The Interplay of Sections 6402(a), 6621(d), 6601(f) and 6611(b) ........ 16

(a) Basic Interest Rules of Sections 6611 and 6601 ........ 16

(b) Effect of Section 6621(d) and the Second Sentence of Section 6601(f) ........ 17

CONCLUSION ........ 18

Appendix 1 ........ A-1
Internal Revenue Service Restructuring and Reform Act of 1998, section 3301(c)
Pub. L. No. 105-206, 112 Stat. 685, 741

Appendix 2.........................................................................................................................................A-2
Omnibus Consolidated and Emergency Supplemental Appropriations Act, section 4002(d),
Pub L. No. 105-277, 112 Stat. 2681-906 through 2681-907

# TABLE OF AUTHORITIES

## CASES


Barnes v. United States, 133 Ct. Cl. 546 (1956) ... 5

Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002) ... 7

Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1969 (2007) ... 2

Bonwit Teller & Co. v. United States, 283 U.S. 258 (1931) ... 5

Campbell v. United States, 592 F.2d 309 (7th Cir. 1979) ... 13

Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993) ... 1

Close v. United States, 218 Ct. Cl. 744 (1978) ... 14

Commissioner v. Newport Industries, 121 F.2d 655 (7th Cir. 1941) ... 14

Escalante v. Commissioner, 2002-1 U.S.T.C. (CCH) ¶ 50,410 (D. Ariz. 2002) ... 13

Estate of Piper v. United States, 9 Cl. Ct. 475 (1986) ... 18

Estate of Shapiro v. Commissioner, 111 F.3d 1010 (2d Cir. 1997) ... 16

Federal Express Corp. v. Holowecki, ___ U.S. ___ , 2008 WL 508018 (Feb. 27, 2008) ... 8

Federal National Mortgage Association v. United States, 379 F.3d 1303, 1311 (Fed. Cir. 2004) ... 8

General Instrument Corp. v. United States, 33 Fed. Cl. 4 (1995) ... 5

Georgeff v. United States, 67 Fed. Cl. 598 (2005) ... 12

Harris v. United States, 33 Fed. Cl. 470 (1995), aff'd, 106 F.3d 426 (Fed. Cir. 1997) ... 5

Huston v. United States, 956 F.2d 259 (Fed. Cir. 1992) ... 8

Lopez v. Davis, 531 U.S. 230 (2001) ... 8

Lyons v. United States, 93-1 U.S.T.C. (CCH) ¶ 50,026 (S.D. Iowa 1992) ... 14

Northern States Power Co. v. United States, 73 F.3d 764 (8th Cir. 1996) ... 12

Peterson v. United States, 68 Fed. Cl. 773 (2005) ... 2

Regions Hospital v. Shalala, 522 U.S. 448 (1998) ... 16

Shell Oil Co. v. United States, 80 Fed. Cl. 411 (2008)........................................................... 2

Snyder v. United States, 630 F. Supp. 182 (D. Md. 1986) ............................................... 15-16

Sunoco, Inc. v. Commissioner, 122 T.C. 88 (2004) ......................................................... 12

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 550 U.S. ___, 127 S. Ct. 2499 (2007) .................. 2

United States v. Ron Pair Enterprises, 489 U.S. 235 (1989) ................................................ 7

Vishnevsky v. United States, 581 F.2d 1249 (7th Cir. 1978) ............................................... 13

Weisman v. United States, 76-2 U.S.T.C. (CCH) ¶ 9731 (D.D.C. 1976)................................. 14

Williams v. Taylor, 529 U.S. 362 (2000) ........................................................................ 16

**STATUTES --INTERNAL REVENUE CODE, 26 U.S.C.**

Section 6166.............................................................................................................. 15, 16

Section 6402(a) ........................................................................................................ passim

Section 6512(a)(1) ......................................................................................................... 5

Section 6514............................................................................................................... 14

Section 6601............................................................................................................... 10

Section 6601(a) ........................................................................................................... 17

Section 6601(f)........................................................................................................ passim

Section 6611.......................................................................................................... 10, 16

Section 6611(b).............................................................................................. 3, 12, 16, 18

Section 6611(b)(1) ...................................................................................................... 17

Section 6621(d)....................................................................................................... passim

Section 6671............................................................................................................... 14

Section 6672............................................................................................................... 14

Section 7422(a) ............................................................................................................ 5

**SESSION LAWS**

Internal Revenue Service Restructuring and Reform Act of 1998 (“RRA”), Pub. L. No. 105-206, 112 Stat. 685, 741 ........ passim

Omnibus Consolidated and Emergency Supplemental Appropriations Act, section 4002(d), Pub. L. No. 105-277, 112 Stat. 2681-906 through 2681-907 ........ 5, 6

**TREASURY REGULATIONS**

Treas. Reg. § 301.6621-1(c)(1) ........ 18

**RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS**

Rule 8(a)(2) ........ 2

Rule 12(b) ........ 1

Rule 12(b)(6) ........ 1, 2, 11, 19

Rule 12(c) ........ 1, 2, 11, 19

Rule 12(f) ........ 1, 19

**OTHER AUTHORITIES**

Rev. Proc. 2000-26, 2000-1 C.B. 1257 ........ 9

Rev. Proc. 99-43, 1999-2 C.B. 579 ........ 9

## INTRODUCTION

Plaintiff, General Electric Company and Subsidiaries ("GE"), by and through its undersigned counsel and pursuant to Rule 12(f) of the Rules of the United States Court of Federal Claims ("RCFC"), respectfully moves the Court to strike defendant's Rule 12(b)(6) motion to dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted. In the alternative, GE respectfully requests that the Court deny defendant's motion. In support of its motion and opposition, GE states as follows:

## I. MOTION TO STRIKE -- DEFENDANT'S 12(b)(6) MOTION TO DISMISS IS UNTIMELY

RCFC 12(b) mandates that a motion to dismiss filed pursuant to RCFC 12(b)(6) "shall be made before pleading if a further pleading is permitted." RCFC 12(b). In other words, a defendant must file its Rule 12(b)(6) motion before filing its Answer. In this case, the defendant filed its Answer on October 30, 2006. Then, on February 7, 2008, nearly 18 months after filing its Answer, defendant filed its current motion to dismiss under Rule 12(b)(6).[1] The law is clear. Because defendant failed to bring its Rule 12(b)(6) motion to dismiss prior to filing its answer, the motion is untimely and should be stricken. Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573, 1577 n.6 (Fed. Cir. 1993).

Should the Court elect to treat the defendant's untimely Rule 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c), the legal standard to be applied is the same as

[1] Over these past 18 months, the case has not been dormant. On April 20, 2007, Plaintiff submitted to Defendant a draft Stipulation of Facts in respect of this case. Defendant declined to consider the draft stipulation, indicating that it would first be necessary to have Defendant's "Recomputation Specialist" review Plaintiff's submission and make interest computations. In subsequent periodic status reports to the court, Defendant provided various reasons why that has not yet been done.

for a motion to dismiss under Rule 12(b)(6). Peterson v. United States, 68 Fed. Cl. 773, 776 (2005). As more fully discussed below, regardless of the form of defendant's motion, the motion is without merit and therefore should be denied.

## II. PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS -- PLAINTIFF'S COMPLAINT STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendant has failed to meet its burden under either Rule 12(b)(6) or Rule 12(c). GE's Complaint states a claim upon which relief can be granted. For this reason, defendant is not entitled to judgment as a matter of law and defendant's motion should be denied.

### A. The Applicable Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), the facts as stated in the Complaint and the documents attached thereto must be taken as true and correct. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 550 U.S. ___, 127 S. Ct. 2499, 2509 (2007); Shell Oil Co. v. United States, 80 Fed. Cl. 411 (2008). A Rule 12(b)(6) motion (or a Rule 12(c) motion) should only be granted "when the accepted pleading standard set forth in RCFC 8(a)(2) is not met: 'once a claim for relief has been stated adequately, it may be supported by showing any set of facts consistent with the allegation in the complaint.'" Shell Oil, 80 Fed. Cl. at 415 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1969 (2007)).

### B. The Complaint States a Claim Upon Which Relief Can Be Granted

The instant case arises out of the audit of GE's federal income tax returns for a number of taxable years, including 1979, 1986 and 1987. (Complaint ¶¶ 13-14, 18-19). GE and the Internal Revenue Service ("IRS") required an extended period of time to resolve the various

issues raised. (Complaint ¶¶ 13-14, 18-19). A resolution of many of the disputed issues was finally reached in 1999. (Complaint ¶¶ 18-19). After computing the resulting tax overpayments and underpayments for the various years involved, the IRS performed interest computations in July 2000 (the "2000 Interest Computations"). (Complaint ¶¶ 25-27). The 2000 Interest Computations are the basis for GE's Complaint.

This case involves the question whether the 2000 Interest Computations should have calculated interest using "interest netting," as mandated by section 6621(d),[2] or whether it was permissible to "credit" under section 6402(a)[3] in the manner employed by the IRS. Under section 6621(d), which was enacted in 1998, if a taxpayer has equivalent amounts of tax underpayment and tax overpayment that "overlap" for a particular period, Congress has provided that the net rate of interest on the two obligations for the overlap period "shall be zero." In many cases, the crediting (*i.e.*, offsetting) of an overpayment against an underpayment under section 6402(a) has substantially the same effect as interest netting under section 6621(d). That is because, under sections 6611(b) and 6601(f) (first sentence), crediting terminates the running of interest on both the overpayment and underpayment amounts as of the effective date of the credit, thereby eliminating any interest on either underlying obligation (to the extent of the credit) from that point forward.[4] If interest netting is applied, however, both the underpayment and the overpayment continue to accrue interest day-by-day until the underlying principal

---

[2] Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue. Section 6621(d) is quoted in full on pages 5-6.

[3] Section 6402(a) is quoted in full on page 12.

[4] These provisions are discussed in more detail on pages 16-17.

obligations are satisfied, with the interest rate required to be the same (either the underpayment rate or the overpayment rate) for both amounts during the overlap period.

In a number of circumstances, there is a difference between interest netting and crediting. In the instant case, the difference is significant because of the fact that GE posted non-interest-bearing cash bonds at periodic intervals to stop the running of underpayment interest pending a final resolution of the disputed issues. (Complaint ¶¶ 20, 31). Under interest netting, the cash bonds could be applied to pay not only the underpayments themselves, but also the accrued underpayment interest, thus ensuring that the cash bonds would be used to their maximum extent. (Complaint ¶¶ 20, 31). On the other hand, under crediting, the cash bonds would not be fully utilized, thereby adversely affecting GE. (Complaint ¶¶ 30, 31).

GE has set forth facts in the Complaint showing that it met all the requirements for the application of interest netting under section 6621(d) before the IRS performed the 2000 Interest Computations. (Complaint ¶¶ 13, 14, 17, 18, 19, 22, 24, 53, 55 & Exhibits 1, 2, 3 & 4). Despite GE's request that interest netting be applied, the IRS did not apply interest netting in the 2000 Interest Computations. (Complaint ¶¶ 25-27). Instead, as the Complaint alleges, the IRS purported to credit GE's 1979 overpayment against its 1986 and 1987 underpayments. (Complaint ¶¶ 25-27). GE asserts in the Complaint that the purported crediting in the 2000 Interest Computations was unlawful and should be reversed because of GE's right to interest netting under section 6621(d). (Complaint ¶¶ 38, 44, 54-56).

The Complaint contains three alternative counts, all of which assert that GE is entitled to relief with respect to the improper actions of the IRS in performing the 2000 Interest Computations. Count One of the Complaint alleges all the elements of an action under section

7422(a) or an action to recover an overpayment ordered by the Tax Court under section 6512(a)(1) for the refund of the 1979 overpayment that GE asserts was improperly credited in the 2000 Interest Computations, plus accrued statutory interest. (Complaint ¶¶ 11, 12, 14, 18, 27, 29, 32, 33, 34, 35, 37 & Exhibits 1 & 2). See Harris v. United States, 33 Fed. Cl. 470, 472 (1995), aff'd, 106 F.3d 426 (Fed. Cir. 1997). Count Two of the Complaint alleges all the elements required for an action under the Tucker Act on an account stated to recover damages in the amount of the 1979 overpayment that GE asserts was improperly credited in the 2000 Interest Computations, plus accrued statutory interest. (Complaint ¶¶ 18, 27, 43, 44, 45 & Exhibits 1 & 2). See Bonwit Teller & Co. v. United States, 283 U.S. 258, 265 (1931). Count Three of the Complaint alleges all the elements required for an action under the Tucker Act for additional statutory interest on the 1979 overpayment under section 6611(a). (Complaint ¶¶ 52-56). See Barnes v. United States, 133 Ct. Cl. 546 (1956); General Instrument Corp. v. United States, 33 Fed. Cl. 4, 8 (1995). The allegations as set forth in the Complaint establish that GE has stated a claim under section 6621(d) upon which relief can be granted.

**1. Section 6621(d)**

Section 6621(d) was enacted in 1998 as part of the Internal Revenue Service Restructuring and Reform Act of 1998 ("RRA"), Pub. L. No. 105-206, 112 Stat. 685, 741 (attached as Appendix 1), as amended by section 4002(d) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act ("OCESAA"), Pub. L. No. 105-277, 112 Stat. 2681-906 through 2681-907 (attached as Appendix 2). Section 6621(d) provides as follows:

> (d) ELIMINATION OF INTEREST ON OVERLAPPING PERIODS OF TAX OVERPAYMENTS AND UNDERPAYMENTS.--To the extent that, for any period, interest is payable under subchapter A and allowable under

> subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

(Emphasis added).

Also as part of the RRA, Congress amended section 6601(f), which provides for the interest consequences of crediting under section 6402(a). Section 3301(b) of the RRA made a "conforming amendment" to section 6601(f), adding a new, second sentence. After the "conforming amendment," section 6601(f) now provides:

> (f) SATISFACTION BY CREDITS.—If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment. The preceding sentence shall not apply to the extent that section 6621(d) applies.

(Emphasis added).

Congress provided for so-called "retroactive interest netting" for periods prior to the July 22, 1998 effective date of the RRA through a "Special Rule" enacted in section 3301(c)(2) of the RRA, and amended by section 4002(d) of the OCESAA. The Special Rule, as amended, provides as follows:

> (2) SPECIAL RULE.--Subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment, the amendments made by this section [*i.e.*, the adoption of interest netting] shall apply to interest for periods beginning before the date of the enactment of this Act if the taxpayer-
>
> (A) reasonably identifies and establishes periods of such tax overpayments and underpayments for which the zero rate applies; and
>
> (B) not later than December 31, 1999, requests the Secretary of the Treasury to apply section 6621(d)

> of the Internal Revenue Code of 1986, as added by subsection (a), to such periods.

(Emphasis added).

### 2. The Application of Section 6621(d) is Mandatory

As with any issue involving a question of statutory construction, the starting point must be the language of the statute itself. United States v. Ron Pair Enterprises, 489 U.S. 235, 241 (1989). The principle that "courts must presume that a legislature says in a statute what it means and means in a statute what it says" is deeply rooted in American jurisprudence. Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461-62 (2002). Accordingly, the plain language and purpose of section 6621(d) and the Special Rule must be carefully examined.

The plain language of the Special Rule governing retroactive interest netting (which is specifically involved in the instant case) provides that where all requirements are met, section 6621(d) "shall apply," *i.e.*, is mandatory. The plain language of section 6621(d) – "the net rate of interest . . . shall be zero" – also indicates that the netting requirement is mandatory, not discretionary. Thus, if there is a period of overlapping mutual indebtedness and the requirements for invoking interest netting are satisfied, the IRS must calculate interest for the overlap period and must apply the same rate of interest to both the underpayment and the overpayment as required under section 6621(d).

The government asserts that the IRS's actions in performing the 2000 Interest Computations were proper under section 6402(a). That section provides that "[i]n the case of any overpayment, the Secretary . . . may credit the amount of such overpayment . . . against any liability. . . ." As indicated by the use of the word "may," and as discussed extensively in the government's motion, the application of section 6402(a) is discretionary. By contrast, section

6621(d) and the Special Rule use the mandatory term "shall." By using the mandatory term "shall," rather than the discretionary term "may," as used in section 6402(a), Congress indicated that section 6621(d) should prevail in any conflict between the two provisions. See Huston v. United States, 956 F.2d 259, 262 (Fed. Cir. 1992) ("[w]hen, within the same statute, Congress uses both 'shall' and 'may,' it is differentiating between mandatory and discretionary tasks"); cf. Lopez v. Davis, 531 U.S. 230, 241 (2001) (noting that Congress's use of the term "shall" indicates its intent to "impose discretionless obligations"), recently cited with approval in Federal Express Corp. v. Holowecki, ___ U.S. ___ , 2008 WL 508018, at *9 (Feb. 27, 2008).

### 3. The Complaint States A Claim For the Application of Retroactive Interest Netting

As can be seen from section 6621(d) and the Special Rule, there are four requirements for the application of retroactive interest netting, the interest mechanism to which GE claims entitlement in the Complaint. First, interest must be payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments of tax by the same taxpayer for the same period. Section 6621(d). Second, any applicable statute of limitation must not have expired with regard to either the underpayment or the overpayment. RRA section 3301(c)(2).[5] Third, the taxpayer must have reasonably identified and established the periods of such overpayments and underpayments for which the net interest rate of zero shall apply. RRA section 3301(c)(2)(A). Fourth, the taxpayer must have requested the application of section

[5] Under Federal National Mortgage Association v. United States, 379 F.3d 1303, 1311 (Fed. Cir. 2004), the statutes of limitations must have been open as of July 22, 1998 for both the overpayment and underpayment for which retroactive interest netting is claimed.

6621(d) to such periods no later than December 31, 1999. RRA section 3301(c)(2)(B).[6] GE alleges in its Complaint that each of the requirements for the retroactive application of section 6621(d) in the 2000 Interest Computations had been satisfied.

First, as a result of the resolution reached in 1999, GE and the IRS were mutually indebted during the period beginning March 15, 1987 and ending February 22, 1991. (Complaint ¶¶ 24, 53 & Exhibit 4). During that period, there were equivalent portions of overpayment owing by the IRS to GE with respect to the 1979 taxable year and underpayment owing by GE to the IRS with respect to the 1986 taxable year. This period is referred to as the "1979/1986 Overlap Period." (Complaint ¶ 53). During the period beginning March 15, 1988 and ending February 22, 1991, GE and the IRS were also mutually indebted. (Complaint ¶¶ 24, 55 & Exhibit 4). During that period, there were equivalent portions of overpayment owing by the IRS to GE with respect to the 1979 taxable year and underpayment owing by GE to the IRS with respect to the 1987 taxable year. (Complaint ¶¶ 24, 55 & Exhibit 4). This period is referred to as the "1979/1987 Overlap Period." (Complaint ¶¶ 55). During the two overlap periods, interest was allowable to GE under section 6611 with respect to its overpayment of $37,170,101 for the year 1979. (Complaint ¶¶ 18 & Exhibits 1 & 2). Interest was payable by GE under section 6601 with respect to its underpayment for the year 1986 in the amount of $70,617,583, and with respect to the underpayment for the year 1987 in the amount of $401,813,144. (Complaint ¶ 19 & Exhibit 3).

[6] Rev. Proc. 99-43, 1999-2 C.B. 579 sets forth the requirements for retroactive interest netting. Rev. Proc. 2000-26, 2000-1 C.B. 1257 sets forth the requirements for "nonretroactive" interest netting. Although the requirements set forth in RRA section 3301(c)(2)(A) and (B) do not apply to interest netting for periods following the effective date of section 6621(d), Rev. Proc. 2000-26 applies the same requirements of identification of overlapping interest periods and filing of a formal request.

Second, as of the date of enactment of section 6621(d), the statute of limitations was open for 1979 (Complaint ¶¶ 13, 14 & Exhibit 1) and for 1986 and 1987 (Complaint ¶ 19 & Exhibits 3 & 4).

Third, on December 21, 1999, GE timely filed Form 843, formally requesting that the IRS apply a net interest rate of zero pursuant to section 6621(d) in computing interest for any overlap period. (Complaint ¶¶ 21, 22 & Exhibit 4).

Fourth, in its formal request for interest netting, GE specified the overlap periods to which netting should apply (which included the 1979/1986 and 1979/1987 Overlap Periods). (Complaint ¶¶ 22, 23 & Exhibit 4).

As the Complaint alleges, despite GE's formal request and its satisfaction of all requirements for the application of section 6621(d), the IRS refused to apply section 6621(d) in the 2000 Interest Computations. (Complaint ¶¶ 25, 27). Rather, the IRS purported to credit under section 6402(a) the 1979 overpayment in the amount of $37,170,101, plus an abatement of deficiency interest in the amount of $3,772,301 and accrued overpayment interest in the amount of $43,993,361, against GE's 1986 and 1987 underpayments. (Complaint ¶¶ 25, 27). Of the total $84,935,763 thus credited, $32,267,222 was credited against the 1986 underpayment and $52,668,541 was credited against the 1987 underpayment. (Complaint ¶ 27).

The Complaint also alleges that the refusal of the IRS to apply interest netting caused monetary harm to GE. (Complaint ¶¶ 30-31, 45, 56). The purported crediting had the effect of retroactively eliminating, as of the due dates of GE's 1986 and 1987 returns, all interest allowable under section 6611 with respect to the 1979 overpayment and all interest payable under section 6601 with respect to the portions of the 1986 and 1987 underpayments offset by

the credit. (Complaint ¶¶ 54, 56). Because of the IRS's failure to apply interest netting, GE has not been able to fully utilize its cash bonds that were designated to be applied to the 1986 and 1987 underpayments. (Complaint ¶¶ 30, 31). Thus, the purported crediting was detrimental to GE.

In its Complaint, GE asked this Court, in the alternative, to (1) deem the credit of the 1979 overpayment against the 1986 and 1987 underpayments to be null and void and to order a refund of such overpayment, plus interest (Complaint Count One); (2) award damages to GE on an account stated theory in the amount of the 1979 overpayment, plus interest (Complaint Count Two), or (3) require the IRS to recompute interest under section 6621(d) and pay GE the interest that would have accrued on the 1979 overpayment during the 1979/1986 and the 1979/1987 Overlap Periods, plus interest thereon to the date of payment (Complaint Count Three). (GE of course would remain correspondingly liable for properly computed underpayment amounts and associated underpayment interest.) Thus, the Complaint has set forth a claim upon which relief can be granted and defendant's motion under Rule 12(b)(6) or Rule 12(c) should be denied.

### C. <u>Defendant's Motion Fails to Demonstrate That Defendant is Entitled to Judgment as a Matter of Law</u>

Defendant's motion fails to demonstrate that defendant is entitled to judgment as a matter of law. The government's motion rests solely on the false premise that, notwithstanding GE's fulfillment of all requirements and the mandatory nature of interest netting under section 6621(d), the IRS has unreviewable discretion under section 6402(a) to ignore section 6621(d) and GE's request, and instead to credit GE's overpayment for 1979 against portions of its underpayments for 1986 and 1987. According to the government, "All of plaintiff's arguments depend – according to plaintiff – upon there being some impediment to the Commissioner's

crediting of plaintiff's 1979 overpayment. Inasmuch as the law is otherwise, the Complaint fails to state a claim upon which relief can be granted, and should be dismissed, with prejudice." (Government Motion at 9).

The government's assertion is incorrect. The IRS does not have unfettered discretion to credit or not credit under section 6402(a). The exercise of its discretion is reviewable by this Court and may be limited by other provisions of the Code (such as section 6621(d) and the conforming amendment to section 6601(f) as argued by GE in this case). Thus, the government is not able to show that it is entitled to a judgment as a matter of law.

**1. Section 6402(a)**

Section 6402(a) gives the IRS the authority to credit an overpayment against an underpayment of the same taxpayer.[7] Section 6402(a) states:

> (a) GENERAL RULE—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), and (e) refund any balance to such person.

As the government notes in its motion, many cases hold that the taxpayer cannot compel the IRS to credit an overpayment against an underpayment. E.g., Northern States Power Co. v. United States, 73 F.3d 764 (8th Cir. 1996); Georgeff v. United States, 67 Fed. Cl. 598, 608 (2005); Sunoco, Inc. v. Commissioner, 122 T.C. 88, 101 (2004). The government relies on these

[7] Section 6402(a) does not itself describe the consequences of crediting as they relate to the calculation of interest. Such consequences are described in section 6611(b) and 6601(f) (first sentence).

cases to show that the IRS has unfettered and unreviewable discretion to credit (or not credit) under section 6402(a). That is not correct.

**2. <u>The Decision to Credit is Reviewable</u>**

The most basic flaw in the government's motion is its premise: "To our knowledge, no court has ever overturned a credit made by the Commissioner pursuant to § 6402(a), nor required that a credit be made, in the face of the Commissioner's inaction. Instead, every court that has ever considered the question has upheld the Commissioner's exercise of his discretion." (Government Motion at 5). The government asserts that all similar cases have reached the same result and that "[e]xamples could be multiplied, but to no particular additional profit." (Government Motion at 9).

Contrary to the government's assertion that "no court has ever overturned a credit made by the Commissioner pursuant to § 6402(a), nor required that a credit be made, in the face of the Commissioner's inaction," courts have reviewed the IRS's decisions to credit (or not credit) overpayments against underpayments and in proper cases have ordered the IRS to make a credit, or to reverse a credit already made and to refund the balance to the taxpayer. For example, in <u>Vishnevsky v. United States</u>, 581 F.2d 1249 (7th Cir. 1978), the Seventh Circuit entered a writ of mandamus ordering the IRS to credit an overpayment against an underpayment under section 6402(a). In <u>Campbell v. United States</u>, 592 F.2d 309 (7th Cir. 1979), the court ordered that a refund of the proceeds of an illegal assessment must be made despite the IRS's argument that such proceeds should be credited against other tax liabilities of the taxpayer under section 6402(a). In <u>Escalante v. Commissioner</u>, 2002-1 U.S.T.C. (CCH) ¶ 50,410 (D. Ariz. 2002), the court denied the government's motion to dismiss where the plaintiff alleged that a credit made

under section 6402(a) violated section 6514, which provides that a credit is void if made after the expiration of the statute of limitation. In Weisman v. United States, 76-2 U.S.T.C. (CCH) ¶ 9731 (D.D.C. 1976), the court held that an overpayment of a "responsible person" penalty amount under sections 6671 and 6672 could not be credited under section 6402(a) against an income tax liability of one of the taxpayers.

Case law also establishes that if the IRS has improperly attempted to credit an overpayment for one year against an underpayment for another year, then, as long as the statute of limitations for the overpayment year is open, the IRS must "correct that error by reversing the credit." Commissioner v. Newport Industries, 121 F.2d 655, 657 (7th Cir. 1941); see also Lyons v. United States, 93-1 U.S.T.C. (CCH) ¶ 50,026 (S.D. Iowa 1992) (a suit may be maintained for overpayment interest that was improperly credited against a liability); Close v. United States, 218 Ct. Cl. 744 (1978) (refusing to dismiss a refund suit because there was no evidence that the IRS had properly credited the agreed-to overpayment against a liability for another year). The government's argument is thus without support.

### 3. Crediting Under Section 6402(a) May be Limited by Other Provisions of the Code

Unlike the cases cited by the government, the instant case does not involve an attempt by GE to compel the IRS to credit the 1979 overpayment to the 1986 and 1987 deficiencies. Rather, GE's position is that under the circumstances as they existed at the time of the 2000 Interest Computations, the IRS's crediting power was limited by section 6621(d) and the second sentence of section 6601(f) and thus could not properly be used to cut off interest on the 1979 overpayment or the 1986 and 1987 underpayments.

GE has alleged in the Complaint that the provisions of sections 6621(d) and 6601(f) are mandatory and that, in case of any conflict, they should prevail over the discretion of the IRS to credit under section 6402(a). GE's position is supported by Snyder v. United States, 630 F. Supp. 182 (D. Md. 1986). In Snyder, the taxpayer's estate consisted chiefly of stock in a family corporation. The estate elected under section 6166 to pay the estate tax in installments over 15 years. The IRS audited the estate, disputed the estate's valuation of the shares of the family corporation, and issued a notice of deficiency. The estate paid the deficiency and sued for a refund. The district court found that the stock value was lower than the amount asserted by the IRS and ordered a refund of the resulting overpayment. Instead of refunding the overpayment, the IRS credited it under section 6402(a) against the total amount of estate tax. (Even after application of the credit, the full amount of estate tax had not yet been fully paid.) The court held that the crediting was improper and ordered a refund of the overpayment and accrued pre- and post-judgment interest to the taxpayer.

In Snyder, similar to its position here, the government argued that notwithstanding section 6166, it was entitled to exercise its discretion in crediting the overpayment against the remaining liability for estate tax. The court, however, found that "Section 6166 creates a very valuable right for taxpayers in limited circumstances . . . . If the [refund] judgment were to be credited to the deferred tax liability, this would have the effect of nullifying the benefits of deferred payments under section 6166." Id. at 184-85. The court found it "inconceivable" that Congress could have intended the IRS's exercise of discretion under section 6402(a) to deprive

the taxpayer of its right to pay in installments under section 6166. Id. at 185. The court held that the credit could not be made and that the IRS must refund the overpayment to the taxpayer. Id.[8]

The decision in Snyder shows that where the IRS exercises its discretion in a way that nullifies the application of another statute and deprives a taxpayer of a benefit intended by that statute, a court can and will reverse the credit. Accordingly, Snyder makes it clear that the IRS's discretion to credit is not unfettered and unreviewable, as claimed by the government.

**4. The Interplay of Sections 6402(a), 6621(d), 6601(f) and 6611(b)**

Under well-established principles of statutory construction, "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Regions Hospital v. Shalala, 522 U.S. 448, 467 (1998); see also Williams v. Taylor, 529 U.S. 362, 404 (2000) ("every clause and word of a statute must be given effect if possible"). The government's analysis, which focuses solely on section 6402(a), violates this principle. The enactment of section 6621(d) in 1998 altered the statutory scheme under which interest had traditionally been computed with respect to underpayments and overpayments of tax.

(a) **Basic Interest Rules of Sections 6611 and 6601**

Section 6611 governs interest on overpayments. Under section 6611(b), interest on an overpayment accrues as follows: (1) if the overpayment is credited against an underpayment, interest runs from the date of the overpayment to the due date of the amount against which the credit is taken; and (2) if the overpayment is refunded, interest runs from the date of the

[8] The decision in Snyder was considered by the Second Circuit in Estate of Shapiro v. Commissioner, 111 F.3d 1010, 1014 (2d Cir. 1997).

overpayment to the date (determined by the IRS when the refund is "scheduled") which precedes the date of the refund check by not more than 30 days. When an overpayment is properly credited against an underpayment for a later taxable year pursuant to section 6402(a), the effect of section 6611(b)(1) generally is to terminate the running of interest on the overpayment as of the due date of the return for the underpayment year.

Section 6601(a) provides that interest on an underpayment of tax is imposed from the last date prescribed for payment of the tax until the date the tax is paid. The first sentence of section 6601(f) provides, in effect, that to the extent an underpayment of tax is paid through the credit of an overpayment, the general rule is that interest on the underpayment stops as of the date when interest on the overpayment stops (*i.e.*, on the due date of the amount against which the credit is taken). In short, where an overpayment for one taxable year is properly credited against an underpayment for a later taxable year pursuant to section 6402(a), the effect of the first sentence of section 6601(f) is to completely eliminate any interest on the amount of the underpayment that is extinguished by the credit.

(b) **<u>Effect of Section 6621(d) and the Second Sentence of Section 6601(f)</u>**

The second sentence of section 6601(f), the "conforming amendment" added by the RRA, provides an exception to the general rule that interest on an underpayment stops on the due date of the underpayment when a prior-year overpayment is credited against it under section 6402(a). The second sentence provides that the first sentence, *i.e.*, the interest cut-off mechanism, "shall not apply to the extent section 6621(d) applies." Thus, if interest netting applies, *i.e.*, if there are periods of mutual indebtedness with respect to overlapping overpayment and underpayment amounts and the taxpayer has appropriately requested interest netting,

Congress's intention is explicit that the normal section 6601(f) rule providing for the cut-off of underpayment interest shall not apply. Underpayment interest thus must continue to run.

While Congress did not expressly amend the general rule of section 6611(b) regarding overpayment interest, it is clear that because the net rate of interest must be zero when interest netting applies, Congress clearly intended that overpayment interest would also continue to run. The governing rule must then be that both overpayment interest and underpayment interest accrue day-by-day until the offsetting principal obligations are satisfied. See Treas. Reg. § 301.6621-1(c)(1); see also Estate of Piper v. United States, 9 Cl. Ct. 475, 478 (1986).

Accordingly, where a taxpayer such as GE has met the requirements for the application of interest netting under section 6621(d), the IRS must apply the interest netting provisions. After computing interest in accordance with section 6621(d), if the IRS wishes to offset a taxpayer's overpayment (and associated interest) against its underpayment (and associated interest), the IRS is still free to do so. The second sentence of section 6601(f) makes clear Congress's intention that such an action will not retroactively terminate or eliminate interest during the overlap periods, and thereby nullify the taxpayer's right to interest netting under section 6621(d). Instead, such an action will allow both types of interest to continue to run until the principal obligations are satisfied. The government thus cannot show that it is entitled to judgment as a matter of law.

## CONCLUSION

As demonstrated above, the Complaint states a claim upon which relief can be granted, specifically that GE was entitled to have retroactive interest netting apply in the 2000 Interest

Computations. The government has failed to establish that it is entitled to judgment as a matter of law.

WHEREFORE, for the reasons stated above, Plaintiff prays that its motion under Rule 12(f) to strike defendant's untimely motion under Rule 12(b)(6) be granted or, in the alternative, that defendant's motion to dismiss the complaint with prejudice under either Rule 12(b)(6) or Rule 12(c) be denied.

Respectfully submitted,

*/s/ Jerome B. Libin*

Jerome B. Libin
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-0100
Fax (202) 637-3593

Counsel for Plaintiff
General Electric Company and Subsidiaries

Of Counsel:

Laurence A. Hoch
GENERAL ELECTRIC COMPANY
GE Corporate Taxes
12 Corporate Woods Blvd., 3rd Fl.
Albany, NY 12211
(518) 433-4359

James V. Heffernan
Mary E. Monahan
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-0100

March 10, 200

# APPENDICES

Appendix 1



of the existence thereof is furnished in such form and manner as the Secretary may require.

"(B) EXCEPTION WHERE INDIVIDUAL HAS GUARDIAN, ETC.--An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters.".

(b) EFFECTIVE DATE.--The amendment made by subsection (a) shall apply to periods of disability before, on, or after the date of the enactment of this Act but shall not apply to any claim for credit or refund which (without regard to such amendment) is barred by the operation of any law or rule of law (including res judicata) as of the date of the enactment of this Act. Applicability. 26 USC 6511 note.

## Subtitle D--Provisions Relating to Interest and Penalties

### SEC. 3301. ELIMINATION OF INTEREST RATE DIFFERENTIAL ON OVERLAPPING PERIODS OF INTEREST ON TAX OVERPAYMENTS AND UNDERPAYMENTS.

(a) IN GENERAL.--Section 6621 (relating to determination of rate of interest) is amended by adding at the end the following new subsection:

"(d) ELIMINATION OF INTEREST ON OVERLAPPING PERIODS OF TAX OVERPAYMENTS AND UNDERPAYMENTS.--To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.".

(b) CONFORMING AMENDMENT.--Subsection (f) of section 6601 (relating to satisfaction by credits) is amended by adding at the end the following new sentence: "The preceding sentence shall not apply to the extent that section 6621(d) applies.".

(c) EFFECTIVE DATES.--

(1) IN GENERAL.--Except as provided under paragraph (2), the amendments made by this section shall apply to interest for periods beginning after the date of the enactment of this Act. Applicability. 26 USC 6601 note.

(2) SPECIAL RULE.--The amendments made by this section shall apply to interest for periods beginning before the date of the enactment of this Act if the taxpayer--

(A) reasonably identifies and establishes periods of such tax overpayments and underpayments for which the zero rate applies; and

(B) not later than December 31, 1999, requests the Secretary of the Treasury to apply section 6621(d) of the Internal Revenue Code of 1986, as added by subsection (a), to such periods. Deadline.

### SEC. 3302. INCREASE IN OVERPAYMENT RATE PAYABLE TO TAXPAYERS OTHER THAN CORPORATIONS.

(a) IN GENERAL.--Subparagraph (B) of section 6621(a)(1) (defining overpayment rate) is amended to read as follows:

"(B) 3 percentage points (2 percentage points in the case of a corporation).".

"(II) the decommissioning of a nuclear power plant (or any unit thereof),

"(III) the dismantlement of a drilling platform,

"(IV) the remediation of environmental contamination, or

"(V) a payment under any workers compensation act (within the meaning of section 461(h)(2)(C)(i)).

"(ii) A liability shall be taken into account under this subparagraph only if—

"(I) the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year, and

"(II) the taxpayer used an accrual method of accounting throughout the period or periods during which such act (or failure to act) occurred.".

(b) EFFECTIVE DATE.--The amendment made by this section shall apply to net operating losses arising in taxable years ending after the date of the enactment of this Act.

## TITLE IV—TECHNICAL CORRECTIONS

### SEC. 4001. DEFINITIONS; COORDINATION WITH OTHER TITLES.

(a) DEFINITIONS.--For purposes of this title—

(1) 1986 CODE.--The term "1986 Code" means the Internal Revenue Code of 1986.

(2) 1998 ACT.--The term "1998 Act" means the Internal Revenue Service Restructuring and Reform Act of 1998 (Public Law 105-206).

(3) 1997 ACT.--The term "1997 Act" means the Taxpayer Relief Act of 1997 (Public Law 105-34).

(b) COORDINATION WITH OTHER TITLES.--For purposes of applying the amendments made by any title of this division other than this title, the provisions of this title shall be treated as having been enacted immediately before the provisions of such other titles.

### SEC. 4002. AMENDMENTS RELATED TO INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM ACT OF 1998.

(a) AMENDMENT RELATED TO SECTION 1101 OF 1998 ACT.--Paragraph (5) of section 6103(h) of the 1986 Code, as added by section 1101(b) of the 1998 Act, is redesignated as paragraph (6).

(b) AMENDMENT RELATED TO SECTION 3001 OF 1998 ACT.--Paragraph (2) of section 7491(a) of the 1986 Code is amended by adding at the end the following flush sentence:

"Subparagraph (C) shall not apply to any qualified revocable trust (as defined in section 645(b)(1)) with respect to liability for tax for any taxable year ending after the date of the decedent's death and before the applicable date (as defined in section 645(b)(2)).".

(c) AMENDMENTS RELATED TO SECTION 3201 OF 1998 ACT.--

(1) Section 7421(a) of the 1986 Code is amended by striking "6015(d)" and inserting "6015(e)".

(2) Subparagraph (A) of section 6015(e)(3) is amended by striking "of this section" and inserting "of subsection (b) or (f)".

(d) AMENDMENT RELATED TO SECTION 3301 OF 1998 ACT.--Paragraph (2) of section 3301(c) of the 1998 Act is amended by striking "The amendments" and inserting "Subject to any applicable

statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment, the amendments".

(e) AMENDMENT RELATED TO SECTION 3401 OF 1998 ACT.--Section 3401(c) of the 1998 Act is amended—

(1) in paragraph (1), by striking "7443(b)" and inserting "7443A(b)"; and

(2) in paragraph (2), by striking "7443(c)" and inserting "7443A(c)".

(f) AMENDMENT RELATED TO SECTION 3433 OF 1998 ACT.--Section 7421(a) of the 1986 Code is amended by inserting "6331(i)," after "6246(b),".

(g) AMENDMENT RELATED TO SECTION 3467 OF 1998 ACT.--The subsection (d) of section 6159 of the 1986 Code relating to cross reference is redesignated as subsection (e).

(h) AMENDMENT RELATED TO SECTION 3708 OF 1998 ACT.--Subparagraph (A) of section 6103(p)(3) of the 1986 Code is amended by inserting "(f)(5)," after "(c), (e),".

(i) AMENDMENTS RELATED TO SECTION 5001 OF 1998 ACT.--

(1) Subparagraph (B) of section 1(h)(13) of the 1986 Code is amended by striking "paragraph (7)(A)" and inserting "paragraph (7)(A)(i)".

(2)(A) Subparagraphs (A)(i)(II), (A)(ii)(II), and (B)(ii) of section 1(h)(13) of the 1986 Code shall not apply to any distribution after December 31, 1997, by a regulated investment company or a real estate investment trust with respect to—

(i) gains and losses recognized directly by such company or trust, and

(ii) amounts properly taken into account by such company or trust by reason of holding (directly or indirectly) an interest in another such company or trust to the extent that such subparagraphs did not apply to such other company or trust with respect to such amounts.

(B) Subparagraph (A) shall not apply to any distribution which is treated under section 852(b)(7) or 857(b)(8) of the 1986 Code as received on December 31, 1997.

(C) For purposes of subparagraph (A), any amount which is includible in gross income of its shareholders under section 852(b)(3)(D) or 857(b)(3)(D) of the 1986 Code after December 31, 1997, shall be treated as distributed after such date.

(D)(i) For purposes of subparagraph (A), in the case of a qualified partnership with respect to which a regulated investment company meets the holding requirement of clause (iii)—

(I) the subparagraphs referred to in subparagraph (A) shall not apply to gains and losses recognized directly by such partnership for purposes of determining such company's distributive share of such gains and losses, and

(II) such company's distributive share of such gains and losses (as so determined) shall be treated as recognized directly by such company.

The preceding sentence shall apply only if the qualified partnership provides the company with written documentation of such distributive share as so determined.

(ii) For purposes of clause (i), the term "qualified partnership" means, with respect to a regulated investment company, any partnership if—

(I) the partnership is an investment company registered under the Investment Company Act of 1940,