**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY and SUBSIDIARIES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No. 06-489 T** |
| **v.** | § | **The Honorable Eric G. Bruggink** |
| | § | |
| **THE UNITED STATES,** | § | |
| | § | |
| **Defendant.** | § | |

**REPLY OF THE UNITED STATES**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**
**FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

NATHAN J. HOCHMAN
*Assistant Attorney General*

DAVID GUSTAFSON
MARY M. ABATE
W. C. RAPP
*Attorneys*
*Justice Department*
*Tax Division*
*Court of Federal Claims Section*
*P.O. Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*(202) 307-0503*
*(202) 307-9440 (facsimile)*

## TABLE OF CONTENTS


Page

Reply of the United States In Support of its Motion to Dismiss the Complaint For Failure to State a Claim Upon Which Relief Can Be Granted. . . . . . . . . . . . . . . . . . . 1

1. Section 6402(a) was not amended by later statutes, nor is the discretion it grants to the Commissioner limited by Code provisions governing the computation of interest, nor is its language in tension with that of any other statutory provision referenced by plaintiff.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. The exercise by the Commissioner of his discretion under § 6402(a), which the Commissioner may himself limit by agreement, compromise, or the like, is reviewable for compliance with the terms of that grant of authority, but not otherwise. No such review is helpful to plaintiff at bar. . . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


## TABLE OF AUTHORITIES

**Cases:**


*Avon Products v. United States*, 588 F.2d 342 (2nd Cir. 1978).. . . . . . . . . . . . . . . . . . . . . 5

*Burnet v. Porter,* 283 U.S. 230 (1931).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Campbell v. United States*, 592 F.2d 309 (6th Cir. 1979) . . . . . . . . . . . . . . . . . . . 15, 17

*Close v. United States*, 218 Ct. Cl. 744 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Commissioner v. Newport Industries*, 121 F.2d 655 (7th Cir. 1941).. . . . . . . . . . . . . . 18, 19

*Escalante v. Commissioner*, 2002 WL 10099199, 2002-1 USTC ¶ 50,410 (D. Ariz. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Kalb v. United States*, 505 F.2d 506 (2d Cir. 1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lyons v. United States*, 93-1 USTC ¶ 50,026 (S.D. Iowa 1992). . . . . . . . . . . . . . . . . . . . . 19

*In Re Ryan,* 64 F.3d 1516 (11th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Cases (Continuation):**

**Page**

*Snyder v. United States*, 630 F. Supp. 182 (D. Md. 1986).. . . . . . . . . . . . . . . . . . . . . . . 9-11

*Tucker v. United States,* 8 Cl. Ct. 575 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vishnevsky v. United States*, 581 F.2d 1249 (7th Cir. 1978). . . . . . . . . . . . . . . . . . . . . 13,14

*Weisman v. United States*, 1976 WL 1152, 76-2 USTC (CCH) ¶ 9731 (D.D.C. 1976). . 17

**Statutes:**

Internal Revenue Codes of 1986 (26 U.S.C.):

§ 832.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 6166.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

§ 6401.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 6402.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

§ 6514.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 6601.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,5, 7, 8

§ 6611.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 11

§ 6621.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-5, 6, 8-12, 19-20

§ 6672.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Internal Revenue Service Restructuring and Reform Act of 1998,
P. L. 105-206, 105th Cong., 2nd Sess., 112 Stat. 685, *reprinted in*
1998-3 C.B. 145, 201 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 22

**Miscellaneous:**

**Page**

Conference Report, H.R. Rep. No. 105-599, 105th Cong., 2d Sess., at 256-257
*reprint* 1998-3 C.B. 747, 1011-11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 31

H.R. Rep. No. 105-364, 105th Cong., 1st Sess., at 63-65
*reprint* 1998-3 C.B. 373, 435-437. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

Rev. Proc. 84-58, 1984-2, C.B. 501 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

S. Rep. No. 105-174, 105th Cong., 2d Sess., at 61-62
*reprint* 19983-3 C.B. 537, 597-98. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 27

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY and SUBSIDIARIES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No. 06-489 T** |
| **v.** | § | **The Honorable Eric G. Bruggink** |
| | § | |
| **THE UNITED STATES,** | § | |
| | § | |
| **Defendant.** | § | |

**REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In our motion to dismiss, the Government contended that the law denies plaintiff's recovery even if all well-pleaded allegations of fact included in the Complaint are taken to be true. Plaintiff's Opposition [1/] suggests that the relevant statutory provision – § 6402(a) of the Internal Revenue Code – either does not mean what it plainly says, or has been amended by implication to say what it plainly does not. Plaintiff is in error.

The question presented is:

> In the case of an overpayment with respect to plaintiff's tax year 1979, may the Internal Revenue Service credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of plaintiff with respect to its tax years 1986 and 1987?

[1/] "Plaintiff's Motion to Strike Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Opposition to Defendant's Motion," filed March 10, 2008 (hereafter "Plaintiff's Opposition" or "Plt. Opp."). This Reply responds to plaintiff's opposition to our motion to dismiss the complaint. On March 24, 2008, defendant filed its opposition to plaintiff's motion to strike our motion to dismiss.

Section 6402(a) of the Internal Revenue Code provides:

> **SEC. 6402. AUTHORITY TO MAKE CREDITS OR REFUNDS.**
> (a) GENERAL RULE.– In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

The question presented thus becomes whether, once the plain and objective requirements of § 6402(a) have been met, Congress has granted to the Commissioner of Internal Revenue, or instead to taxpayers or courts, discretion as to how to apply an overpayment. The answer is manifest in the language of the statute.

Plaintiff interposes two objections to the Government's reading of § 6402(a). First, plaintiff believes § 6402(a) was amended *by implication* as a consequence of the enactment of legislation addressing the computation of interest. Plt. Opp. 5 - 11, 14 - 18. Second, plaintiff contends that the authority granted by § 6402(a) is subject to review beyond that necessary to determine that its explicit requirements have been met. Plt. Opp. 12 - 14.

1. Section 6402(a) was not amended by later statutes, nor is the discretion it grants to the Commissioner limited by Code provisions governing the computation of interest, nor is its language in tension with that of any other statutory provision referenced by plaintiff.

For reasons thought by the legislature to be sufficient, the normal interest rate paid to taxpayers on an overpayment owed to them is less than the normal interest rate paid by a taxpayer on an underpayment owed to the Government. *Compare* § 6621(a)(1) *with* § 6621(a)(2). [2/] Section 6621(d) provides that, notwithstanding this general interest rate

---

[2/] Currently, there is no differential for an individual taxpayer. For a corporate taxpayer, the differential is at least 1 percentage point, and is 2½ percentage points for overpayments in excess of $10,000. A one percentage point differential for individuals was eliminated in 1998.

differential, for periods where a taxpayer has both an outstanding overpayment and an outstanding underpayment, the "net rate of interest" applied "shall be zero." Of course, a taxpayer cannot simultaneously have both an overpayment and an underpayment for the same tax for the same year. That is, at any particular point in real time, a taxpayer will have had either an overpayment or an underpayment (or neither) with respect to his federal income tax for a particular taxable year.

Section 6621(d) seeks to address the situation where a taxpayer had an *over*payment with respect to one year outstanding at the same time the same taxpayer had an *under*payment outstanding with respect to a different year. Plaintiff contends that, in this situation, the Commissioner must first compute interest (including application of § 6621(d)), and only then may the overpayment be credited or refunded pursuant to § 6402. Plt. Opp. at 7-8, 17-18. Plaintiff proffers two reasons: first, because the "net rate zero" interest rate provision of § 6621(d) is mandatory ("shall be zero"), while the discretion granted to the Commissioner by § 6402 is permissive ("may credit"), Plt. Opp. 7-8; second, because when § 6621(d) was enacted, Congress also added a conforming amendment to § 6601(f), a section which deals with the computation of underpayment interest. Plt. Opp. 17-18. Both contentions are without merit. Moreover, it is not clear how the sort of regime envisioned by plaintiff could be implemented as a practical matter.

Plaintiff's primary contention is that there exists tension between the mandatory language of § 6621(d) and the permissive language of § 6402. Plaintiff's argument runs that since the mandatory must prevail over the merely permissive, interest netting pursuant to the mandatory § 6621(d) must take place before crediting pursuant to the merely permissive § 6402. Plaintiff

insists that by this choice of language, "Congress indicated that section 6621(d) should prevail in any conflict between the two provisions." Plt. Opp. 8. [3/]

While in some instances a permissive "may" does indicate a more limited grant of authority by the legislature, that is simply not the case in the present context. Here, the effect of the statutory language that permits the Commissioner to credit an overpayment against an underpayment, saying not that he *must* do so, but that instead he "*may* credit the amount of such overpayment," is to grant more – not less – discretion. Section 6402 could have been drafted to *require* that such a credit be made. But it does not. Section 6402 could have included language that imposed detailed rules or restrictions (such as those proposed by plaintiff) governing and limiting the exercise of the Commissioner's power. But it does not.

Moreover, the "mandatory" language in § 6621(d) is dictated and circumscribed by its purpose: to prescribe an interest rate. All of the interest-prescribing provisions of § 6621 are implemented using the word "shall." Thus, the overpayment rate "shall be," while the underpayment rate "shall be." That is, the rates are not optional. It is not clear how an interest-mandating provision could be worded to make it permissive: language such as "the overpayment rate *may* be . . ." does not accomplish the legislative goal, and makes no grammatical sense. Thus, where plaintiff contends that "shall" means more than "may" and that thus § 6621(d) should be applied before § 6402 may be invoked, plaintiff has it exactly backwards. The broad grant of discretion accomplished by use of the word "may" in § 6402 means that, so long as the

[3/] Both cases cited by plaintiff, presumably as support for the quoted proposition, dealt with alleged tension resulting from the use of "shall" and "may" within different sub-sections of the same section of a statute. In the case at bar, the alleged ocnflict is between two entirely different sections of the Code.

prerequisites of that section have been met, the Commissioner's discretion must be respected.

Plaintiff also argues that amendment of § 6601(f) by the same legislation that added § 6621(d) shows that a hierarchy was established, with interest-netting having priority over the Commissioner's discretion to credit or refund an overpayment. Plt. Opp. 17-18. That no such substantive change was intended can be demonstrated by a quick review of the computation of interest where an underpayment is satisfied by an overpayment.

Section 6601 prescribes rules for the computation of underpayment interest, and provides generally:

> **SEC. 6601. INTEREST ON UNDERPAYMENT, NONPAYMENT, OR EXTENSIONS OF TIME FOR PAYMENT, OF TAX.**
> (a) GENERAL RULE.– If any amount of tax imposed by this title . . . is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

Interest on an underpayment of tax therefore ordinarily commences when the tax is unpaid [4/] and ends when the tax has been paid. Plaintiff observes that before amendment [5/] in 1998, § 6601(f) read as follows:

> (f) SATISFACTION BY CREDITS.– If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the

---

[4/] A literal reading of the statute would lead to the conclusion that interest began to run when the tax was due, whether or not it was in fact unpaid on that date. Logic would suggest instead that interest should commence when the obligation became unpaid. A tax liability that was fully paid when originally due may become unpaid at a later date as the consequence of an excessive refund or credit. Section 6601(a) has been interpreted to impose interest only when the amount is both due and unpaid. *Avon Products v. United States*, 588 F.2d 342 (2nd Cir. 1978).

[5/] Both § 6621(d) and the conforming amendment to § 6601(f) were embodied in Section 3301 of the Internal Revenue Service Restructuring and Reform Act of 1998, P. L. 105-206, 105th Cong., 2nd Sess., 112 Stat. 685, 741, *reprinted in* 1998-3 Cum. Bull. 145, 201 (1998). The relevant section of the Act is reproduced in the Appendix, *infra*.

> portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment.

Thus, no underpayment interest is imposed for the period during which overpayment and underpayment interest would have overlapped, had the credit not been made, and the underpayment had not been satisfied via credit. Note that this statutory scheme requires that interest *would have been* allowable on the overpayment. Thus, for any period during which no interest would have been allowable, underpayment interest would be imposed on the corresponding underpayment for that period. [6]

This, in turn, leads us to the statute prescribing overpayment interest. Section 6611 provides, in relevant part, as follows:

> **SEC. 6611. INTEREST ON OVERPAYMENTS.**
>
> (a) RATE.– Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.
>
> (b) PERIOD.– Such interest shall be allowed and paid as follows:
>
> (1) CREDITS.– In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.
>
> (2) REFUNDS.– In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer.

Basic operation of these provisions may be illustrated by a simple example. Assume that Taxpayer has an overpayment with respect to calendar 2001, and an underpayment of equivalent amount with respect to calendar 2002. Agreement to this effect is reached with the Commissioner, and appropriate adjustments are made, in August, 2005. In a simple case,

---

[6] *See, e.g.*, § 6611(e), providing a 45-day overpayment-interest-free period when an overpayment is promptly refunded or credited.

Taxpayer's taxes for 2001 first became overpaid – and the overpayment began to bear interest under § 6611 – when the return (and therefore the tax) for 2001 was due – March 15, 2002 for a corporation. If that overpayment were refunded it would bear interest, pursuant to§ 6611(b)(2), from March 15, 2002, until it was refunded to Taxpayer in August, 2005. Meanwhile, assume that Taxpayer's taxes for 2002 first became unpaid (again, in the simplest case) when they were first due to be paid – March 15, 2003. If that underpayment is satisfied by Taxpayer's payment (rather than by IRS's crediting), the deficiency would bear interest under § 6601(a) from March 15, 2003, until actually paid by Taxpayer in August, 2005.

If, however, the Commissioner exercises his discretion under § 6402(a), and credits the overpayment from 2001 against the underpayment of equivalent amount for 2002, interest is computed differently. Overpayment interest, now computed under § 6611(b)(1), still begins on March 15, 2002, but now ends on "the due date of the amount against which the credit is taken." Taxpayer's tax for 2002, the underpayment year, against which the overpayment is to be credited, was due to be paid on March 15, 2003. Thus, interest on the overpayment now runs only from March 15, 2002, until March 15, 2003. On the underpayment side – because the underpayment has been satisfied by the overpayment credit from 2001 – pursuant to § 6601(f) no interest will be imposed, "for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment." As set out above, if the credit had not been made then interest on the overpayment would have run from March 15, 2002, until the refund was paid, in August 2005. In this simple example, therefore, overpayment interest with respect to 2001 would have run for the entire period during which underpayment interest for 2002 would

have run: until the refund and payment, respectively, in August, 2005. As a result, no underpayment interest at all is imposed on this underpayment.

The underpayment interest statute just illustrated, § 6601(f), was amended by the same legislation that first enacted § 6621(d), by the addition of the sentence we have italicized below, to read as follows:

> (f) SATISFACTION BY CREDITS.– If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment. *The preceding sentence shall not apply to the extent that section 6621(d) applies.*

Plaintiff contends that this amendment to § 6601(f) – a statute having to do with computation of underpayment interest – had the effect of amending § 6402(a), and somehow limiting the authority and discretion granted to the Commissioner by that section. Plt. Opp. 17-18. Such an argument seems odd on its face, inasmuch as the amendment makes no mention of, let alone works an explicit change to, the statutory provision plaintiff claims it radically changes. Moreover, this supposed momentous change to the working of § 6402(a) is not mentioned in the legislative history, [7/] and appears in the amending legislation, Appendix, *infra*, only in this modest form:

> (b) CONFORMING AMENDMENT.– Subsection (f) of section 6601 (relating to satisfaction by credits) is amended by adding at the end the following new sentence: "The preceding sentence shall not apply to the extent that section 6621(d) applies."

[7/] The reports for the Internal Revenue Service Restructuring and Reform Act of 1998 include the House Report, H.R. Rep. No. 105-364, 105th Cong., 1st Sess. at 63-65 (1998-3 Cum. Bull. 373, 435-437), the Senate Report, S. Rep. No. 105-174, 105th Cong., 2d Sess. at 61-62 (1998-3 Cum. Bull. 537, 597-98), and the Conference Report, H.R. Rep. No. 105-599, 105th Cong., 2d. Sess., 256-57 (1998-3 Cum. Bull. 747, 1010-11). Those portions of these reports dealing with the amendments relevant to this case have been reproduced in the Appendix, *infra*.

We suggest that the role of this modest "conforming amendment" is merely to make clear that a taxpayer may not have both the benefit of net-rate-zero interest netting via § 6621(d) as well as the benefit of the elimination of underpayment interest through § 6621(d). [8] It has no limiting effect on the Commissioner's discretion to credit – or not credit – an overpayment pursuant to § 6402(a).

In support of its argument in this respect, plaintiff places particular reliance on the trial court decision *Snyder v. United States*, 630 F. Supp 182 (D. Md. 1986). Plt. Opp. 14 - 16. Plaintiff believes that *Snyder* stands for the proposition that provisions of the Internal Revenue Code *other than* § 6402 limit the Commissioner's discretion and, indeed, "are mandatory and that, in case of any conflict, they should prevail over the discretion of the IRS to credit under section 6402(a)." Plt. Opp. at 15. To the contrary, *Snyder* stands only for the unremarkable proposition that the Commissioner's authority and discretion granted by § 6402(a) are limited by the terms of § 6402(a), and his action may be reviewed for compliance with those terms.

In *Snyder*, the taxpayer was an estate which had elected to take advantage of § 6166. As the court explained (630 F.Supp. at 183):

> Under the terms of 26 U.S.C. § 6166, Congress has permitted those estates whose principal asset is a family business to pay their estate tax over a period of years. In 1979, when [plaintiff's decedent] Mary Fingles died, owning The Fingles Company, § 6166 allowed an estate to spread the payment of the estate tax over 15 years; interest only at 4% would be due for the first five years and then principal and interest could be paid for the next ten years. At the end of the 15-year period, the entire tax would then have been paid.

---

[8] If it be objected that it should be obvious that no such double benefit should be allowed, we observe that this would not be the only provision of the Internal Revenue Code through which Congress cautiously stated what might have seemed obvious. Internal Revenue Code 832(d) provides "Nothing in this section shall permit the same item to be deducted more than once."

After audit, assessment, and payment of a deficiency, the estate sued for a refund. The District Court agreed with the taxpayer, and found that there had been an overpayment. Instead of paying a refund, thus permitting the remainder of the total estate tax liability to be paid over time as contemplated by § 6166, the Commissioner applied the overpayment as a credit against the total estate tax, including that which otherwise would not have been due until some future time. In its analysis, the court recognized that § 6402 permitted the Commissioner to credit an overpayment against "any tax then due," but went on to hold that, where the tax was *not yet due to be paid* – by virtue of deferral pursuant to § 6166 – § 6402 did not permit a credit (630 F.Supp. at 184) (emphasis added):

> The issue in the present case is whether § 6402 should apply to a situation where payment of the tax is deferred by law for ten years. The Court concludes it should not.
>
> * * * * *
>
> The plaintiff asserts that if § 6402 and the accompanying regulation are to be interpreted in the manner suggested by the Internal Revenue Service, it would totally negate the benefits of deferred payments confirmed under § 6166. The plaintiff suggests that the proper application of § 6402 is to credit overpayments against taxes *then due* – not to liabilities which by law become due in the future. The Court is persuaded by the merits of this argument.

Thus, *Snyder* does not stand for the proposition that the Commissioner's invocation of § 6402 may be reviewed to determine if some other statutory provision might place the taxpayer in a more advantageous position. Instead, *Snyder* holds only that other provisions of law may be consulted to determine if the explicit conditions of § 6402 have been met. One of those conditions – the existence of an outstanding liability against which to credit the overpayment – had not been met on the facts of *Snyder*. General Electric suggests no analogous provision of law here which would call into question compliance with the terms of § 6402: there was an

overpayment; there were underpayments; the former was credited against the latter within the period of limitations. Unlike the facts of *Snyder*, General Electric's tax deficiencies were due and unpaid when the credits were made. That is the end of the inquiry.

Finally, it is not at all clear how an interest netting computation under § 6621(d) would be performed if (as plaintiff contends) such a computation must be done before the Commissioner credits – or does not credit – an outstanding overpayment. Section 6621(d) reads as follows:

> (d) ELIMINATION OF INTEREST ON OVERLAPPING PERIODS OF TAX OVERPAYMENTS AND UNDERPAYMENTS.– To the extent that, for any period, interest is payable under subchapter A [§§ 6601 - 6603, "Interest on Underpayments"] and allowable under subchapter B [§§ 6611 and 6612, "Interest on Overpayments"] on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

The mechanics of § 6621(d) require the equalization of underpayment and overpayment interest during periods when both are imposed on equivalent amounts. Put simply, to perform a computation carrying out the command of § 6621(d), one must know the period during which "interest is payable under subchapter A," as well as the period when interest is "allowable under subchapter B." But, as we have seen, § 6611(b) makes interest payable on an overpayment for differing periods, depending upon whether that overpayment is to be refunded or instead credited against an underpayment. If the overpayment is refunded, "interest is payable" until the refund is made under § 6611(b)(2), while if the overpayment is credited, "interest is payable" instead only to the "due date of the amount against which the credit is taken" under § 6611(b)(1).

Moreover, where a taxpayer has outstanding more than one deficiency (as in the case at bar), the period during which "interest is payable" will be different yet again depending upon to which underpayment the overpayment is credited. Thus, a necessary fact for interest

computation under § 6621(d) is the period during which overpayment interest was payable – a fact not knowable until the Commissioner determines how the overpayment is to be returned to the taxpayer, by refund or credit and, if the latter, against which of several liabilities that might be outstanding. It is accordingly impossible to do what plaintiff says must be done: perform an interest netting computation first, and only then determine whether the overpayment is to be refunded or credited. [9/]

2. The exercise by the Commissioner of his discretion under § 6402(a), which the Commissioner may himself limit by agreement, compromise, or the like, is reviewable for compliance with the terms of that grant of authority, but not otherwise. No such review is helpful to plaintiff at bar.

In our Motion, we observed that courts have not overturned credits made by the Commissioner under § 6402(a), nor ordered such credits to be made. Plaintiff believes it has

---

[9/] Plaintiff also asserts that the crediting of the overpayments somehow deprived plaintiff of a benefit that would otherwise have obtained regarding remittances plaintiff made as deposits in the nature of a cash bond. ("[U]nder crediting, the cash bonds would not be fully utilized, thereby adversely affecting GE"; and "GE has not been able to fully utilize its cash bonds . . . ." Plt. Opp. at 4, 11.) While the Commissioner's disposition of plaintiff's overpayment certainly caused changes in the way plaintiff's various overpayments were satisfied, and therefore ultimately may have changed the way interest was computed on later transactions, it is simply not true that plaintiff was thereby deprived of some benefit to which it was otherwise entitled. A taxpayer posts a cash bond in order to stop the running of underpayment interest on a deficiency. Such a remittance is not a "payment," it must be returned to the taxpayer upon request, and (because it is not a payment) it bears no interest when and if returned to the taxpayer. *See generally*, Rev. Proc. 84-58, 1984-2 Cum.Bull. 501 (1984). While this matter is beyond the scope of the Government's Motion, it is a fact that plaintiff received the full benefit of the cash bonds in that the posting of the bonds cut off deficiency interest – the purpose of such remittances. What General Electric has *not* received is overpayment interest on the 1979 overpayment (once the 1986 account was determined to be overpaid), to the extent that overpayment equaled the amount of the cash bonds. Thus, it is clear that the "benefit" plaintiff seeks is the ability to manipulate the credits and cash bonds so that the cash bond (which does not bear overpayment interest) will not be considered the last payment for purposes of determining overpayment interest allowable on overpayments determined and refunded years after the transactions of which plaintiff complains in the instant case. At the time when plaintiff could either have posted deposits in the nature of cash bonds or instead have made payments of tax, plaintiff guessed which would turn out best for General Electric. Plaintiff guessed wrong.

discovered numerous cases in which courts have in fact reviewed the Commissioner's exercise of his discretion. Those cited cases, however, merely illustrate instances in which courts have found that § 6402 did not apply, either because the prerequisites of § 6402 had not been met or, having been met, had been constrained by the Commissioner himself. Plaintiff herein does not dispute that at the time of the transfers of which it complains there was in fact an outstanding overpayment, there were in fact outstanding underpayments, all overpayments and underpayments were those of the same taxpayer, and the credit to which it objects was made within the relevant statute of limitations. Plaintiff herein does not claim the existence of a compromise or other contract between General Electric and the United States pursuant to which the Commissioner has limited his otherwise broad discretion under § 6402. Accordingly, the cases cited by plaintiff are entirely beside the point.

Plaintiff says that in *Vishnevsky v. United States*, 581 F.2d 1249 (7th Cir. 1978), "the Seventh Circuit entered a writ of mandamus ordering the IRS to credit an overpayment against an underpayment under section 6402(a)." Plt. Opp. 13. That statement is not only incorrect, it is misleading. In *Vishnevsky*, which was brought as a mandamus action, not a refund suit, the Seventh Circuit held the District Director of Internal Revenue to his promise to apply an overassessment, pursuant to § 6402, against deficiencies for other years. The notice of deficiency for the underpayment years that was sent to the taxpayers by letter of July 10, 1972 (within the statute of limitations for filing a refund claim for the overpayment year) stated that, after the correct amounts of the deficiencies were determined, "the overassessment will be scheduled for adjustment to the extent allowable and applied as set forth in section 6402 of the Internal

Revenue Code." *Id.* at 1250. There was no dispute as to the amount of the overassessment, but the taxpayers litigated in Tax Court the amounts of the proposed deficiencies. During that litigation, the refund claim statute expired, and thereafter, the IRS refused to credit the undisputed overassessment against the deficiencies determined by the Tax Court. The court held that, "[on] the facts of this rather unique case, . . . a refund or credit was allowed here on July 10, 1972." (*Id.* at 1254.) That being the case, mandamus would lie to require the Internal Revenue Service to perform what was thereafter no more than a ministerial duty (*Id.* at 1253):

> [T]he appropriateness of mandamus relief turns on the existence of a clear right in the plaintiff to demand the performance by the defendant of a plainly defined, peremptory, and ministerial duty, and the lack of an adequate remedy other than mandamus." . . . There is such a duty in the unique circumstances of this case.

The Seventh Circuit was careful to distinguish the situation before it – where the taxpayer sought performance of a prior agreement – from one where the taxpayer instead might seek review of the Commissioner's discretion under § 6402. After quoting that provision, the court explained (*ibid.*) (emphasis added):

> Insofar as § 6402 *permits* the crediting of overpayments against tax liabilities, it invokes the exercise of discretion by the Secretary or his delegate. *See Kalb v. United States*, 505 F.2d 506, 509 (2d Cir. 1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). Such an exercise could most assuredly not be challenged in an action for mandamus, if indeed it could be challenged at all.

The court concluded by reiterating that the case was unique (*id.* at 1257):

> We reemphasize here that our decision is very much tied to the particular and unique facts of this case. We surely do not mean to encourage, and will not in the future entertain, lawsuits invoking mandamus relief against Treasury officials unless there is the clear and peremptory duty which we have found here. We doubt that such a duty will exist in many cases.

And none exists here. Thus, *Vishnevsky* contradicts plaintiff's view of the law.

Plaintiff states (Plt. Opp. at 13) that in *Campbell v. United States*, 592 F.2d 309 (6th Cir. 1979), "the court ordered that a refund of the proceeds of an illegal assessment must be made despite the IRS's argument that such proceeds should be credited against other tax liabilities of the taxpayer under section 6402(a)." Plaintiff's description omits the fact that the Seventh Circuit actually found not that it could review a discretionary act of the Commissioner, but instead that the provisions of § 6402 had not been complied with. In that case Detroit police had seized $280,000 in cash from Mr. Campbell's home while searching for firearms. Having been notified of this fact, the Service made a jeopardy tax assessment against him, and claimed a lien on part of the cash, which portion was turned over to the Internal Revenue Service. A state court thereafter determined that the cash had been illegally seized, and ordered its return, and a federal district court determined that the Service's assessment was invalid because the prescribed procedures had not been followed. The Service then issued a new deficiency notice, and maintained that it could retain the cash, and apply it to the newly-proposed deficiency, pursuant to § 6402. The court disagreed (592 F.2d at 312):

> However broad the scope of [§ 6402], it cannot be applied to alter the provisions of a final judgment ordering the return of funds illegally held by the Internal Revenue Service. Under no reasonable construction of the term can such funds be held to constitute an "overpayment" within the meaning of the statute.

Thus, as the facts did not bring the situation within the four corners of § 6402, that section simply did not apply. General Electric concedes that all of the requirements of § 6402 have been met here.

Plaintiff's description of *Escalante v. Commissioner*, 2002-1 U.S.T.C. ¶ 50,410 (D. Ariz. 2002), conveys the erroneous impression that the court there held that the discretion granted by

§ 6402 is limited by other statutory provisions. According to plaintiff, "The court denied the government's motion to dismiss where [Escalante] alleged that a credit made under section 6402(a) violated section 6514, which provides that a credit is void if made after the expiration of the statute of limitation." Plt. Opp. at 13. On the Government's 12(b)(6) motion to dismiss in that case, the court looked "solely to the allegations of the Complaint and, accepting them as true, the Court finds that Plaintiffs have alleged facts which, if proven, would entitle them to relief." 2002 WL 1009199 at *2. Noting that the complaint alleged that the IRS's crediting of the overpayment occurred after expiration of the statute of limitations on collection of the deficiency to which the credit was applied, the court stated:

> 26 U.S.C. § 6402 grants to the IRS the discretion, in the case of any tax overpayment, to credit the amount of such overpayment against any liability *within the applicable period of limitations.* Furthermore, "[a]ny credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 6401(a)." 26 U.S.C. § 6514(b). Overpayment include payments made after the period allowed for assessment or collection has expired. *See* 26 U.S.C. § 6401(a).
>
> * * *
>
> Thus, the critical question in this case is whether the applicable assessment and collection periods expired prior to the IRS' crediting of the Plaintiffs' 1999 tax overpayment.

*Id.* at *2, *3 (emphasis in original). The court then explicitly distinguished cases cited by the Government for the proposition that the IRS's discretionary acts under § 6402 are not reviewable, stating (*id.* at *3):

> [*In re*] *Ryan*[, 64 F.3d 1516, 1524 (11th Cir. 1995)] and *Kalb* [*v. United States*, 505 F.2d 506, 509 (2nd Cir. 1974)], however, dealt with the issues regarding whether a taxpayer could direct application of payments and whether a taxpayer could challenge how the IRS credited an overpayment. The issue in this case, however, is whether the IRS' credit of Plaintiff's [sic] alleged overpayment occurred outside the statutory authority of the

> agency. Thus, *Ryan* and *Kalb* are distinguishable and do not prevent judicial review of Plaintiffs' refund claim.

Thus, as with the other cases cited by plaintiff, *Escalante* is not a judicial review of the propriety of the Commissioner's discretionary act, but is instead an inquiry into whether the explicit conditions of § 6402 have been met. In the case at bar, plaintiff does not contend that the credit was made outside the period of limitations.

Plaintiff describes *Weisman v. United States*, 76-2 U.S.T.C. (CCH) ¶ 9731 (D.D.C. 1976), as a case where "the court held that an overpayment of a responsible person penalty . . . could not be credited under section 6402(a) against an income tax liability for one of the taxpayers." Plt. Opp. at 14. The statement is misleading. In *Weisman*, the Government and the plaintiffs had settled the § 6672-penalty refund suit and the Government's counterclaim after trial, and the settlement (as the parties advised the court) provided for the IRS to pay the plaintiffs $3,059.33. 1976 WL 1152 at *1. After several extensions to permit issuance of the check, the parties notified the court that the IRS had applied a substantial portion of the agreed payment amount to plaintiffs' outstanding income tax liability. The court did not conclude that the Commissioner had exercised his discretion badly, in violation of some other statutory provision that implicitly provided the taxpayer with grounds to challenge the Commissioner's action, but instead concluded that, by agreeing to specific settlement terms, the Commissioner had compromised away his ability to exercise that discretion at all (*id.* at *2, emphasis added): "The Court is not persuaded that defendant's attempted set off was proper *under the complex circumstances of this settlement*." Thus, like *Campbell, Weisman* does not stand for the proposition that the Commissioner's exercise of discretion under § 6402 is reviewable, but

instead encapsulates the principle that the Commissioner's voluntary limitation of that discretion, by agreement or settlement, will be enforced. In the case at bar, plaintiff does not assert that there has been any similar settlement.

Finally, plaintiff relies on three cases for the erroneous proposition that "if the IRS has improperly attempted to credit an overpayment for one year against an underpayment for another year, then, as long as the statute of limitations for the overpayment year is open, the IRS must 'correct that error by reversing the credit.'" Plt. Opp. at 14. As with plaintiff's other citations, these cases do not say quite what plaintiff seems to believe they do. In relying on *Commissioner v. Newport Industries*, 121 F.2d 655 (7th Cir. 1941), plaintiff fails to observe that in that case the taxpayer challenged the Commissioner's authority to first make, and then to reverse, an overpayment credit (121 F.2d at 655):

> In this case the Commissioner of Internal Revenue allowed an overpayment claim for one year, credited the overpayment against a deficiency for a prior year, and reported the resulting balance to the taxpayer. After the balance owing the Government for the prior year had been paid, the Commissioner disallowed the overpayment claim, reversed the credit and reinstated the deficiency. The question presented is whether the Commissioner had the power to reopen the case, reconsider his previous action and make a further determination.

The court determined that he did (121 F.2d at 657):

> Our thought in the matter is that the Commissioner has the power in a tax case to undo what he has done in order to eliminate error, and that in the instant case he exercised the power of correction properly and timely. We think this conclusion squares with the case law on the subject. It is the general rule that within the period of limitations the Commissioner may reopen his own administrative rulings and findings.

There is just no support in this analysis for plaintiff's proposition that the Commissioner's authority and discretion under § 6402 is limited and hedged round by a thicket of petty implied

restrictions. Instead, the *Newport Industries* court, citing *Burnet v. Porter*, 283 U.S. 230, 231 (1931), respected the Commissioner's broad discretion to credit – and uncredit – overpayments of tax. *See* 121 F.2d at 658.

Similarly, in citing *Lyons v. United States*, 93-1 U.S.T.C. ¶ 50,026 (S.D. Iowa 1992) and *Close v. United States*, 218 Ct. Cl. 744 (1978), plaintiff does no more than call this Court's attention to other instances in which courts have found that on the facts before them the explicit and objective terms *of § 6402(a) itself* have not been complied with. Both cases find no more than that § 6402 requires the existence of a deficiency against which an outstanding overpayment is credited and that, if there exists no valid deficiency, there can be no credit – "We cannot dismiss the plaintiff's claim if, at the time the Secretary attempted to credit the 1976 overpayment, a 'liability' did not exist under I.R.C. § 6402(a)." 218 Ct. Cl. 744. That is certainly the way this Court has viewed *Close*. *Tucker v. United States*, 8 Cl. Ct. 575, 587 (1985), and cases cited therein. Once again, we do not understand plaintiff to have alleged that, at the time of the credit to which it objects, the deficiency against which the credit was taken did not actually exist.

CONCLUSION

The mandate of § 6621(d) that the interest rate during overlapping periods "shall be zero" is no longer operative once a credit has been applied: there are no longer overlapping periods of overpayment and underpayment after application of the credit, and the net rate of interest for the overlapping periods that would have existed prior to application of the credit has become zero by virtue of application of the credit, and invocation of §§ 6601(f) and 6611(b)(1). Thus,

paradoxically, the crediting of the overpayments in this case effectively complied with the "shall be zero" provision of § 6621(d), which does not specify that the net rate of zero must be achieved by netting outstanding overpayments and deficiencies against each other rather than by applying the overpayment as a credit to the underpayment.

It thus becomes clear that plaintiff's demand in the instant case is *not* that the "shall be zero" mandate of § 6621(d) be satisfied; rather plaintiff's claim is that the Service was obligated to *create or preserve* the overlapping periods of overpayment and underpayment that would trigger the operation of § 6621(d), by reversing a credit properly made under § 6402(a) or by refraining from making such a credit in the first place. Plaintiff is asking the court to hold that the Commissioner was required to leave a $32 million overpayment sitting in plaintiff's 1979 account – unrefunded and uncredited, and accruing interest – simply in order to trigger § 6621(d). Plaintiff would benefit from that § 6621(d) treatment only because later adjustments to plaintiff's accounts would then result in more interest being paid to plaintiff.

Where § 6402(a) by its terms grants discretion to the Commissioner as to the disposition of overpayments, plaintiff demands – without any statutory mandate for such a radical proposition – that, instead, *taxpayers* may, at *their* discretion, direct the disposition of overpayments. Moreover, plaintiff insists that they may do so retroactively. May a taxpayer require the Internal Revenue Service to take back a tax refund once made and put the money back into the account as an overpayment, and thereafter earn more overpayment interest? We think not.

WHEREFORE, for the reasons set out above, as well as in our motion to dismiss, defendant prays that its motion be granted, and that the Complaint be dismissed, with prejudice, with all allowable costs assessed against plaintiff.

Respectfully submitted,

s/ W. C. Rapp

W. C. RAPP
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 307-0503 / Fax: (202) 514-9440*
*Email: william.c.rapp2@usdoj.gov*

NATHAN J. HOCHMAN
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
MARY M. ABATE
*Assistant Chief, Court of Federal Claims Section*

March 27, 2008

s/ Mary M. Abate
Of Counsel

# APPENDIX

Internal Revenue Service Restructuring and Reform Act of 1998, P. L. 105-206, 105th Cong., 2nd Sess., 112 Stat. 685, 741-742:

## Subtitle D–Provisions Relating to Interest and Penalties

### SEC. 3301. ELIMINATION OF INTEREST RATE DIFFERENTIAL ON OVERLAPPING PERIODS OF INTEREST ON TAX OVERPAYMENTS AND UNDERPAYMENTS.

(a) IN GENERAL.– Section 6621 (relating to determination of rate of interest) is amended by adding at the end the following new subsection:

"(d) ELIMINATION OF INTEREST ON OVERLAPPING PERIODS OF TAX OVERPAYMENTS AND UNDERPAYMENTS.– To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.".

(b) CONFORMING AMENDMENT.– Subsection (f) of section 6601 (relating to satisfaction by credits) is amended by adding at the end the following new sentence: "The preceding sentence shall not apply to the extent that section 6621(d) applies.".

(c) EFFECTIVE DATES.–

(1) IN GENERAL.– Except as provided under paragraph (2), the amendments made by this section shall apply to interest for periods beginning after the date of the enactment of this Act.

(2) SPECIAL RULE.– The amendments made by this section shall apply to interest for periods beginning before the date of the enactment of this Act if the taxpayer–

(A) reasonably identifies and establishes periods of such tax overpayments and underpayments for which the zero rate applies; and

(B) not later than December 31, 1999, requests the Secretary of the Treasury to apply section 6621(d) of the Internal Revenue Code of 1986, as added by subsection (a), to such periods.

### SEC. 3302. INCREASE IN OVERPAYMENT RATE PAYABLE TO TAXPAYERS OTHER THAN CORPORATIONS.

(a) IN GENERAL.– Subparagraph (B) of section 6621(a)(1) (defining overpayment rate) is amended to read as follows:

"(B) 3 percentage points (2 percentage points in the case of a corporation).".

(b) EFFECTIVE DATE.– The amendment made by this section shall apply to interest for the second and succeeding calendar quarters beginning after the date of the enactment of this Act.

105TH CONGRESS
1st Session

HOUSE OF REPRESENTATIVES

REPT. 105–364
Part 1

# INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM ACT OF 1997

OCTOBER 31, 1997.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. ARCHER, from the Committee on Ways and Means, submitted the following

## REPORT

[To accompany H.R. 2676]

[Including cost estimate of the Congressional Budget Office]

together with

## ADDITIONAL AND DISSENTING VIEWS

The Committee on Ways and Means, to whom was referred the bill (H.R. 2676) to amend the Internal Revenue Code of 1986 to restructure and reform the Internal Revenue Service, and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

CONTENTS

| | Page |
|---|---|
| I. Summary and Background | 30 |
| A. Purpose and Summary | 30 |
| B. Background and Need for Legislation | 32 |
| C. Legislative History | 32 |
| II. Explanation of the Bill | 33 |
| Title I. Executive Branch Government | 33 |
| A. Creation of IRS Oversight Board (sec. 101) | 33 |
| B. Appointment and Duties of IRS Commissioner (secs. 102 and 103) | 38 |
| C. Structure and Funding of the Employee Plans and Exempt Organizations Division (sec. 102) | 40 |
| D. Taxpayer Advocate (sec. 102) | 42 |
| E. Prohibition on Executive Branch Influence Over Taxpayer Audits (sec. 104) | 44 |
| F. IRS Personnel Flexibilities (sec. 111) | 45 |

59–006

EFFECTIVE DATE

The provision applies to periods of disability before, on, or after the date of enactment but would not apply to any claim for refund or credit which (without regard to the provision) is barred by the statute of limitations as of January 1, 1998.

### D. Provisions Relating to Interest

#### 1. Elimination of Interest Differential on Overlapping Periods of Interest on Income Tax Overpayments and Underpayments (sec. 331 of the bill and sec. 6621 of the Code)

PRESENT LAW

A taxpayer that underpays its taxes is required to pay interest on the underpayment at a rate equal to the Federal short term interest rate plus three percentage points. A special "hot interest" rate equal to the Federal short term interest rate plus five percentage points applies in the case of certain large corporate underpayments.

A taxpayer that overpays its taxes receives interest on the overpayment at a rate equal to the Federal short term interest rate plus two percentage points. In the case of corporate overpayments in excess of $10,000, this is reduced to the Federal short term interest rate plus one-half of a percentage point.

If a taxpayer has an underpayment of tax from one year and an overpayment of tax from a different year that are outstanding at the same time, the IRS will typically offset the overpayment against the underpayment and apply the appropriate interest to the resulting net underpayment or overpayment. However, if either the underpayment or overpayment have been satisfied, the IRS will not typically offset the two amounts, but rather will assess or credit interest on the full underpayment or overpayment at the underpayment or overpayment rate. This has the effect of assessing the underpayment at the higher underpayment rate and crediting the overpayment at the lower overpayment rate. This results in the taxpayer being assessed a net interest charge, even if the amounts of the overpayment and underpayment are the same.

The Secretary has the authority to credit the amount of any overpayment against any liability under the Code.[39] Congress has previously directed the Internal Revenue Service to consider procedures for "netting" overpayments and underpayments and, to the extent a portion of tax due is satisfied by a credit of an overpayment, not impose interest.[40]

REASONS FOR CHANGE

The Committee believes that taxpayers should be charged interest only on the amount they actually owe, taking into account over-

[39] Code sec. 6402

[40] Pursuant to TBOR2 (1996), the Secretary conducted a study of the manner in which the IRS has implemented the netting of interest on overpayments and underpayments and the policy and administrative implications of global netting. The legislative history to the General Agreement on Trade and Tariffs (GATT) (1994) stated that the Secretary should implement the most comprehensive crediting procedures that are consistent with sound administrative practice, and should do so as rapidly as is practicable. A similar statement was included in the Conference Report to the Omnibus Budget Reconciliation Act of 1990.

payments and underpayments from all open years. The Committee does not believe that the different interest rates provided for overpayments and underpayments were ever intended to result in the charging of the differential on periods of mutual indebtedness.

The Committee is also concerned that current practices provide an incentive to taxpayers to delay the payment of underpayments they do not contest, so that the underpayments will be available to offset any overpayments that are later determined. The Committee believes that this is contrary to sound tax administrative practice and that taxpayers should not be disadvantaged solely because they promptly pay their tax bills.

EXPLANATION OF PROVISION

The bill establishes a net interest rate of zero on equivalent amounts of overpayment and underpayment that exist for any period. Each overpayment and underpayment is to be considered only once in determining whether equivalent amounts of overpayment and underpayment exist. The special rules that increase the interest rate paid on large corporate underpayments and decrease the interest rate received on corporate underpayments in excess of $10,000 do not prevent the application of the net zero rate. The bill applies to income taxes and self-employment taxes.

For example, following an examination of his 1998 return, a corporate taxpayer is determined to have overpaid its 1998 taxes by $5,000. Previously, the taxpayer established by an amended return that it had underpaid its 1999 taxes by $7,000. The taxpayer has paid the 1999 underpayment, plus interest determined at the underpayment rate. The statute of limitations has not run with respect to either 1998 or 1999. In determining the amount of the refund owed the taxpayer with regard to the 1998 overpayment, the period for which the 1999 underpayment was outstanding must be taken into account. For all periods in which the underpayment and overpayment run concurrently (i.e., from the due date of the 1999 return until the underpayment was paid), the interest rate on the $5,000 overpayment and $5,000 of the underpayment must be the same so that the net interest rate of zero applies.[41] The interest rate on the remaining $2,000 of the underpayment that was originally calculated at the short term Federal rate plus three percent would not be affected.

EFFECTIVE DATE

The provision applies to interest for calendar quarters beginning after the date of enactment. Until such time as procedures are implemented that allow for the automatic application of this provision by the IRS, the Committee expects that the Secretary will promptly and carefully consider any taxpayer's request to have interest charges recalculated in accordance with this provision. It is expected that the Secretary will extend the statute of limitations where necessary to allow for the consideration of such requests.

[41] In this case, it is assumed that the interest rate on $5,000 of overpayment will be set equal to the underpayment rate for the period that both the underpayment and overpayment are outstanding in order to achieve the required net interest rate of zero. However, the Secretary may use other procedures or methodologies that he deems appropriate, so long as a zero net interest rate is achieved.

In light of past Congressional statements urging the Secretary to eliminate interest rate differentials in these circumstances, and taking into consideration Congress' belief that the Secretary may do so, the Committee continues to expect that the Secretary will implement the most comprehensive crediting procedures that are consistent with sound administrative practice, and not only those affected by this provision.

2. Increase in Overpayment Rate Payable to Taxpayers Other than Corporations (sec. 332 of the bill and sec. 6621 of the Code)

PRESENT LAW

A taxpayer that underpays its taxes is required to pay interest on the underpayment at a rate equal to the Federal short-term interest rate (AFR) plus three percentage points. A taxpayer that overpays its taxes receives interest on the overpayment at a rate equal to the Federal short-term interest rate (AFR) plus two percentage points.

REASONS FOR CHANGE

The Committee believes that the interest differential for noncorporate taxpayers should be eliminated.

EXPLANATION OF PROVISION

The bill provides that the overpayment interest rate will be AFR plus three percentage points, except that for corporations, the rate will remain at AFR plus two percentage points.

EFFECTIVE DATE

The provision applies to interest for calendar quarters beginning after the date of enactment.

## E. Protections for Taxpayers Subject to Audit or Collection

1. Privilege of Confidentiality Extended to Taxpayer's Dealings with Non-attorneys Authorized to Practice Before IRS (sec. 341 of the bill and sec. 7602 of the Code)

PRESENT LAW

A common law privilege of confidentiality exists for communications between an attorney and client with respect to the legal advice the attorney gives the client. Communications protected by the attorney-client privilege must be based on facts of which the attorney is informed by the taxpayer, without the presence of strangers, for the purpose of securing the advice of the attorney. The privilege may not be claimed where the purpose of the communication is the commission of a crime or tort. The taxpayer must be, or be seeking to become, a client of the attorney.

The privilege of confidentiality applies only where the attorney is advising the client on legal matters. It does not apply in situations where the attorney is acting in other capacities. Thus, a taxpayer may not claim the benefits of the attorney-client privilege simply by hiring an attorney to perform some other function. For example, if an attorney is retained to prepare a tax return, the at-

**Calendar No. 341**

105TH CONGRESS, 2d Session — SENATE — REPORT 105–174

# INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM ACT OF 1998

APRIL 22, 1998.—Ordered to be printed

Mr. ROTH, from the Committee on Finance, submitted the following

# REPORT

[To accompany H.R. 2676]

The Committee on Finance, to which was referred the bill (H.R. 2676) to amend the Internal Revenue Code of 1986 to restructure and reform the Internal Revenue Service, and for other purposes, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

CONTENTS


| | Page |
|---|---|
| I. Legislative Background | 7 |
| II. Explanation of the Bill | 8 |
| Title I. Executive Branch Governance and Management of the IRS | 8 |
| A. IRS Restructuring and Creation of IRS Oversight Board | 8 |
| 1. IRS restructuring and mission (secs. 1001–1002) | 8 |
| 2. Establishment and duties of IRS Oversight Board (sec. 1101) | 10 |
| B. Appointment and Duties of IRS Commissioner and Chief Counsel and Other Personnel | 17 |
| 1. IRS Commissioner and other personnel (secs. 1102(a) and 1104) | 17 |
| 2. IRS Chief Counsel (sec. 1102(a)) | 18 |
| C. Structure and Funding of the Employee Plans and Exempt Organizations Division ("EP/EO") (sec. 1101) | 19 |
| D. Taxpayer Advocate (secs. 1102 (a), (c), and (d)) | 21 |
| E. Treasury Office of Inspector General; IRS Office of the Chief Inspector (secs. 1102(a) and 1103) | 25 |
| F. Prohibition on Executive Branch Influence Over Taxpayer Audits (sec. 1105) | 33 |
| G. IRS Personnel Flexibilities (secs. 1201–1205) | 34 |
| Title II. Electronic Filing | 39 |
| A. Electronic Filing of Tax and Information Returns (sec. 2001) | 39 |
| B. Due Date for Certain Information Returns (sec. 2002) | 40 |


59–010

*Effective Date*

The provision applies to periods of disability before, on, or after the date of enactment but does not apply to any claim for refund or credit which (without regard to the provision) is barred by the statute of limitations as of January 1, 1998.

D. PROVISIONS RELATING TO INTEREST AND PENALTIES

1. Elimination of interest differential on overlapping periods of interest on income tax overpayments and underpayments (sec. 3301 of the bill and sec. 6621 of the Code)

*Present Law*

A taxpayer that underpays its taxes is required to pay interest on the underpayment at a rate equal to the Federal short term interest rate plus three percentage points. A special "hot interest" rate equal to the Federal short term interest rate plus five percentage points applies in the case of certain large corporate underpayments.

A taxpayer that overpays its taxes receives interest on the overpayment at a rate equal to the Federal short term interest rate plus two percentage points. In the case of corporate overpayments in excess of $10,000, this is reduced to the Federal short term interest rate plus one-half of a percentage point.

If a taxpayer has an underpayment of tax from one year and an overpayment of tax from a different year that are outstanding at the same time, the IRS will typically offset the overpayment against the underpayment and apply the appropriate interest to the resulting net underpayment or overpayment. However, if either the underpayment or overpayment has been satisfied, the IRS will not typically offset the two amounts, but rather will assess or credit interest on the full underpayment or overpayment at the underpayment or overpayment rate. This has the effect of assessing the underpayment at the higher underpayment rate and crediting the overpayment at the lower overpayment rate. This results in the taxpayer being assessed a net interest charge, even if the amounts of the overpayment and underpayment are the same.

The Secretary has the authority to credit the amount of any overpayment against any liability under the Code.[32] Congress has previously directed the Internal Revenue Service to implement procedures for "netting" overpayments and underpayments to the extent a portion of tax due is satisfied by a credit of an overpayment.[33]

*Reasons for Change*

The Committee believes that taxpayers should be charged interest only on the amount they actually owe, taking into account overpayments and underpayments from all open years. The Committee

[32] Code sec. 6402.

[33] Pursuant to TBOR2 (1996), the Secretary conducted a study of the manner in which the IRS has implemented the netting of interest on overpayments and underpayments and the policy and administrative implications of global netting. The legislative history to the General Agreement on Trade and Tariffs (GATT) (1994) stated that the Secretary should implement the most comprehensive crediting procedures that are consistent with sound administrative practice, and should do so as rapidly as is practicable. A similar statement was included in the Conference Report to the Omnibus Budget Reconciliation Act of 1990.

does not believe that the different interest rates provided for overpayments and underpayments were ever intended to result in the charging of the differential on periods of mutual indebtedness.

The Committee is also concerned that current practices provide an incentive to taxpayers to delay the payment of underpayments they do not contest, so that the underpayments will be available to offset any overpayments that are later determined. The Committee believes that this is contrary to sound tax administrative practice and that taxpayers should not be disadvantaged solely because they promptly pay their tax bills.

*Explanation of Provision*

The provision establishes a net interest rate of zero on equivalent amounts of overpayment and underpayment that exist for any period. Each overpayment and underpayment is considered only once in determining whether equivalent amounts of overpayment and underpayment exist. The special rules that increase the interest rate paid on large corporate underpayments and decrease the interest rate received on corporate underpayments in excess of $10,000 do not prevent the application of the net zero rate. The provision applies to income taxes and self-employment taxes.

*Effective Date*

The provision applies to interest for calendar quarters beginning after the date of enactment. Until such time as procedures are implemented that allow for the automatic application of this provision by the IRS, the Committee expects that the Secretary will promptly and carefully consider any taxpayer's request to have interest charges recalculated in accordance with this provision. It is expected that the Secretary will extend the statute of limitations on assessment where necessary to allow for the consideration of such requests.

In light of past Congressional statements urging the Secretary to eliminate interest rate differentials in these circumstances, and taking into consideration Congress' belief that the Secretary may do so, the Committee continues to expect that the Secretary will implement the most comprehensive interest netting procedures that are consistent with sound administrative practice, and not only those affected by this provision.

2. Increase in overpayment rate payable to taxpayers other than corporations (sec. 3302 of the bill and sec. 6621(a)(1) of the Code)

*Present Law*

A taxpayer that underpays its taxes is required to pay interest on the underpayment at a rate equal to the Federal short-term interest rate (AFR) plus three percentage points. A taxpayer that overpays its taxes receives interest on the overpayment at a rate equal to the Federal short-term interest rate (AFR) plus two percentage points.

*Reasons for Change*

The Committee believes that the interest differential for noncorporate taxpayers should be eliminated.

*Explanation of Provision*

The provision provides that the overpayment interest rate will be AFR plus three percentage points, except that for corporations, the rate remains at AFR plus two percentage points.

*Effective Date*

The provision applies to interest for calendar quarters beginning after the date of enactment.

3. Elimination of penalty for individual's failure to pay during period of installment agreement (sec. 3303 of the bill and sec. 6651 of the Code)

*Present Law*

Taxpayers who fail to pay their taxes are subject to a penalty of one-half percent per month on the unpaid amount, up to a maximum of 25 percent (sec. 6651(a)). If the liability is shown on the return, the penalty begins to accrue on the date prescribed for payment of the tax (with regard to extensions (sec. 6651(a)(2)). If the liability should have been shown on the return but was not, the penalty generally begins to accrue after the date that is 21 days from the date of the IRS notice and demand for payment with respect to such liability (sec. 6651(a)(3)). Taxpayers who make installment payments pursuant to an agreement with the IRS (under sec. 6159) are also subject to this penalty (Treas. reg. sec. 301.6159–1(f) and sec. 6601(b)).

*Reasons for Change*

The Committee believes that it is inappropriate to apply the penalty for failure to pay taxes to taxpayers who are in fact paying their taxes through an installment agreement.

*Explanation of Provision*

The provision provides that the penalty for failure to pay taxes is not imposed with respect to the tax liability of an individual for any month in which an installment payment agreement with the IRS (under sec. 6159) is in effect, provided that the individual filed the tax return in a timely manner (including extensions).

*Effective Date*

The provision is effective for installment agreement payments made after the date of enactment.

105TH CONGRESS } HOUSE OF REPRESENTATIVES { REPORT
*2d Session* } { 105–599

# INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM ACT OF 1998

## CONFERENCE REPORT

TO ACCOMPANY

## H.R. 2676

JUNE 24, 1998.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
49–287 WASHINGTON : 1998

barred by the operation of any law, including the statute of limitations, as of January 1, 1998.

***Senate Amendment***

Same as the House bill.

***Conference Agreement***

The conference agreement follows the House bill and the Senate amendment.

*Effective date.*—The provision applies to periods of disability before, on, or after the date of enactment but does not apply to any claim for refund or credit that (without regard to the provision) is barred by the operation of any law, including the statute of limitations, as of the date of enactment.

## D. Provisions Relating to Interest and Penalties

### 1. Elimination of interest differential on overlapping periods of interest on income tax overpayments and underpayments (sec. 331 of the House bill and sec. 3301 of the Senate amendment)

***Present Law***

A taxpayer that underpays its taxes is required to pay interest on the underpayment at a rate equal to the Federal short term interest rate plus three percentage points. A special "hot interest" rate equal to the Federal short term interest rate plus five percentage points applies in the case of certain large corporate underpayments.

A taxpayer that overpays its taxes receives interest on the overpayment at a rate equal to the Federal short term interest rate plus two percentage points. In the case of corporate overpayments in excess of $10,000, this is reduced to the Federal short term interest rate plus one-half of a percentage point.

If a taxpayer has an underpayment of tax from one year and an overpayment of tax from a different year that are outstanding at the same time, the IRS will typically offset the overpayment against the underpayment and apply the appropriate interest to the resulting net underpayment or overpayment. However, if either the underpayment or overpayment has been satisfied, the IRS will not typically offset the two amounts, but rather will assess or credit interest on the full underpayment or overpayment at the underpayment or overpayment rate. This has the effect of assessing the underpayment at the higher underpayment rate and crediting the overpayment at the lower overpayment rate. This results in the taxpayer being assessed a net interest charge, even if the amounts of the overpayment and underpayment are the same.

The Secretary has the authority to credit the amount of any overpayment against any liability under the Code. Congress has previously directed the Internal Revenue Service to implement procedures for "netting" overpayments and underpayments to the extent a portion of tax due is satisfied by a credit of an overpayment.

### *House Bill*

The House bill establishes a net interest rate of zero where interest is payable and allowable on equivalent amounts of overpayment and underpayment of income tax that exist for any period. Each overpayment and underpayment is considered only once in determining whether equivalent amounts of overpayment and underpayment exist. The special rules that increase the interest rate paid on large corporate underpayments and decrease the interest rate received on corporate underpayments in excess of $10,000 do not prevent the application of the net zero rate. The provision applies to income taxes and self-employment taxes.

*Effective date*.—Interest for calendar quarters beginning after the date of enactment.

### *Senate Amendment*

Generally same as the House bill, except that the Senate amendment applies where interest is payable and allowable on equivalent amounts of overpayment and underpayment of any taxes imposed by Title 26 (the Internal Revenue Code), and not only income taxes.

*Effective date*.—Same as the House bill. In addition, the provision applies to interest for periods beginning before the date of enactment if: (1) the statute of limitations has not expired with respect to either the underpayment or overpayment; (2) the taxpayer identifies the periods of underpayment and overpayment for which the zero rate applies; and (3) on or before December 31, 1999, the taxpayer asks the Secretary to apply the zero rate.

### *Conference Agreement*

The conference agreement follows the Senate amendment. It is anticipated that the Secretary will take into account interest paid on previously determined deficiencies or refunds for the purpose of determining the rate of interest under this provision without regard to whether the underpayments or overpayments are currently outstanding. It is also anticipated that where interest is both payable from and allowable to an individual taxpayer for the same period, the Secretary will take all reasonable efforts to offset the liabilities, rather than process them separately using the net interest rate of zero. Where interest is payable and allowable on an equivalent amount of underpayment and overpayment that is attributable to a taxpayer's interest in a pass-thru entity (e.g., a partnership), the conferees intend that the benefits of the provision apply.

## 2. Increase in overpayment rate payable to taxpayers other than corporations (sec. 332 of the House bill and sec. 3302 of the Senate amendment)

### *Present Law*

A taxpayer that underpays its taxes is required to pay interest on the underpayment at a rate equal to the Federal short-term interest rate (AFR) plus three percentage points. A taxpayer that overpays its taxes receives interest on the overpayment at a rate

equal to the Federal short-term interest rate (AFR) plus two percentage points.

### *House Bill*

The House bill provides that the overpayment interest rate will be AFR plus three percentage points, except that for corporations, the rate remains at AFR plus two percentage points.

*Effective date.*—Interest for calendar quarters beginning after the date of enactment.

### *Senate Amendment*

Same as the House bill, except for the effective date.

*Effective date.*—Interest for the second and succeeding calendar quarters beginning after the date of enactment.

### *Conference Agreement*

The conference agreement follows the Senate amendment.

## 3. Mitigation of penalty for individual's failure to pay during period of installment agreement (sec. 376 of the House bill and sec. 3303 of the Senate amendment)

### *Present Law*

Taxpayers who fail to pay their taxes are subject to a penalty of one-half percent per month on the unpaid amount, up to a maximum of 25 percent. If the liability is shown on the return, the penalty begins to accrue on the date prescribed for payment of the tax (with regard to extensions). If the liability should have been shown on the return but was not, the penalty generally begins to accrue after the date that is 21 days from the date of the IRS notice and demand for payment with respect to such liability. Taxpayers who make installment payments pursuant to an agreement with the IRS are also subject to this penalty.

### *House Bill*

The House bill provides that the penalty for failure to pay taxes is not imposed with respect to the tax liability of an individual with respect to any month in which an installment payment agreement with the IRS is in effect to the extent that doing so would result in the cumulative penalty percentage exceeding 9.5 percent (instead of 25 percent).

*Effective date.*—Installment agreement payments made after the date of enactment.

### *Senate Amendment*

The Senate amendment provides that the penalty for failure to pay taxes is not imposed with respect to the tax liability of an individual for any month in which an installment payment agreement with the IRS is in effect, provided that the individual filed the tax return in a timely manner (including extensions).

*Effective date.*—Installment agreement payments made after December 31, 1999.