**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GENERAL ELECTRIC COMPANY and SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-489 T** |
| | ) | **The Honorable Eric G. Bruggink** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

Of Counsel:

Laurence A. Hoch
GENERAL ELECTRIC COMPANY
GE Corporate Taxes
12 Corporate Woods Blvd., 3rd Fl.
Albany, NY 12211
(518) 433-4349

Jerome B. Libin (Attorney of Record)
James V. Heffernan
Mary E. Monahan
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-0100
FAX (202) 637-3593

Counsel for Plaintiff
General Electric Company and Subsidiaries

August 27, 2008

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

ARGUMENT ..... 1

I. The Relevance of Snyder v. United States ..... 1

A. The Unpaid Balance in Snyder Was An Amount Against Which a Credit Could Properly Have Been Taken Under Sec. 6402(a) ..... 3

B. Snyder Refused to Allow a Credit Under Sec. 6402 Because It Would Have Negated the Benefits of the Election Made Under Sec. 6166 ..... 4

II. Interest Netting as Mandated by Sec. 6621(d) Does Not Completely Preclude the IRS Power to Credit Under Sec. 6402 ..... 5

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

### CASES

Estate of Piper v. United States, 9 Cl. Ct. 475 (1986) ....................9

Estate of Shapiro v. Commissioner, 111 F.3d 1010 (2d Cir. 1997)....................5

McCarl v. United States ex rel. Leland, 42 F.2d 346 (D.C. Cir. 1930) ....................4

Parker Hannifin Corp. v. United States, 71 Fed. Cl. 231 (2006) ....................7

Snyder v. United States, 630 F. Supp 182 (D. Md. 1986) .................... 1-5

United States v. Swift & Co., 282 U.S. 468 (1931)....................7

### STATUTES -- INTERNAL REVENUE CODE, 26 U.S.C.

Section 6166.................... 1-5

Section 6201(a)(1) ....................4

Section 6402.................... passim

Section 6402(a) .................... passim

Section 6407....................7

Section 6501(a) ....................4

Section 6601(f).................... 6-9

Section 6611(b)(1) .................... 6-8

Section 6621(d).................... passim

Section 7422(d)....................7

### SESSION LAWS

Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685, 741 ....................6

**TREASURY REGULATIONS AND ADMINISTRATIVE RULINGS**

Treas. Reg. § 301.6402-1 .....3

Treas. Reg. § 301.6407-1 .....7

Treas. Reg. § 301.6601-1(h)(2)(i) .....8

Treas. Reg. § 301.6621-1(c)(1) .....9

CCA 200217005 (Apr. 26, 2002) .....4

Rev. Rul. 2007-52, 2007-37 I.R.B. 575 .....4

## ARGUMENT

Pursuant to the Court's Order of June 25, 2008, as supplemented by its Order of August 7, 2008, Plaintiff, General Electric Company and Subsidiaries ("GE"), by and through its undersigned counsel, hereby respectfully responds to certain points raised in the Reply of the United States in Support of Its Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted ("Def. Rep."), filed March 27, 2008.[1]

### I. The Relevance of Snyder v. United States

Defendant's Motion to Dismiss is based on the ground that it has unfettered discretion under sec. 6402(a) to credit (or not credit) a taxpayer's overpayment for one year against its underpayment for another year, irrespective of the requirement for interest netting contained in sec. 6621(d).[2] In its June 25, 2008 conference call with the parties, the Court requested that GE give particular attention in this Surreply to the relevance of Snyder v. United States, 630 F. Supp. 182 (D. Md. 1986), to the sec. 6402(a) argument made by the Defendant.

In Snyder, the taxpayer filed an estate tax return in 1980, paid a portion of the tax shown, and elected under sec. 6166 to pay the balance of the tax over a 15-year period. In 1981, the IRS issued a notice of deficiency with respect to the tax reported. The estate paid the asserted deficiency and sued for a refund of that amount. The jury found substantially in favor of the taxpayer and the district court ordered a refund of most of the payment made. Instead of refunding the ordered amount, the IRS in 1984 credited that amount against the estate's deferred tax liability, thereby reducing the unpaid balance. The taxpayer filed a motion to enforce the

---

[1] There is no discussion in this Surreply of a Joint Demonstrative, as requested by the Court. See Plaintiff's Motion for Leave to File Plaintiff's Demonstrative, filed simultaneously with this Surreply.

[2] Unless otherwise stated, all section references are to the Internal Revenue Code of 1986 or 1954 as in effect for the period in issue.

judgment. The district court found that crediting was not proper under the circumstances and ordered that a refund be made. 630 F. Supp. at 185.

In its Opposition to Defendant's Motion to Dismiss, GE cited Snyder (and other cases) for the proposition that the IRS does not have unfettered discretion under sec. 6402(a) to credit (or not credit) an overpayment against an existing tax liability.[3] GE placed particular reliance on Snyder for this point because the facts of Snyder are quite analogous to those presented here.

In its Reply, Defendant claimed that Snyder does not support GE's argument that sec. 6402(a) is limited in its application by other Code provisions, such as sec. 6166 (estate tax deferral) or sec. 6621(d) (interest netting). Rather, according to Defendant, Snyder stands only for the proposition that "other provisions of law may be consulted to determine if the explicit conditions of § 6402 have been met." Defendant goes on to assert that "One of those conditions – the existence of an outstanding liability against which to credit the overpayment – had not been met on the facts of Snyder."[4] According to Defendant, because the tax against which the credit was taken was not yet due in Snyder, the credit was impermissible, not by reason of sec. 6166, but under the terms of sec. 6402(a) itself. As a contrast, and to justify its position here, Defendant asserts that "Unlike the facts of Snyder, General Electric's tax deficiencies were due and unpaid when the credits were made. That is the end of the inquiry." Def. Rep. 11.

In support of its reading of Snyder, Defendant quotes the following passage from the court's opinion:

> The plaintiff asserts that if § 6402 and the accompanying regulation are to be interpreted in the manner suggested by the Internal Revenue Service, it would totally negate the benefit of

---

[3] Plaintiff's Motion to Strike Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Opposition to Defendant's Motion (hereinafter "Pl. Opp.") 13-16.

[4] Def. Rep. 10.

> deferred payments confirmed under § 6166. The plaintiff suggest that the proper application of § 6402 is to credit overpayments against taxes then due -- not to liabilities which by law become due in the future. The Court is persuaded by the merits of this argument.

Snyder, 630 F. Supp. at 184. Defendant contends that this passage reflects a conclusion reached by the Snyder court that the technical statutory conditions for crediting contained in sec. 6402(a) had not been met in that case. Def. Rep. 10.

As discussed below, Defendant is mistaken both in its claim that the sec. 6402(a) conditions for crediting had not been met in Snyder and in its assertion that sec. 6166 was not dispositive in that case.

**A. The Unpaid Balance in Snyder Was An Amount Against Which a Credit Could Properly Have Been Taken Under Sec. 6402(a)**

On a superficial reading, the passage quoted above from Snyder might suggest that the tax liability against which a credit may be taken under sec. 6402(a) must be "then due." But sec. 6402(a) does not so provide. It merely states that a credit may be taken against "any liability in respect of an internal revenue tax on the part of the person who made the overpayment." Treas. Reg. sec. 301.6402-1 underpins the statute by stating that a credit may be taken against "any outstanding liability for any tax." Neither the Code nor the regulations make any reference to when the tax must actually be due. The only requirement is that there be an "outstanding liability" for a tax.

There can be no question that the entire estate tax liability in Snyder, including the deferred payment portion, was an "outstanding liability" as contemplated by sec. 6402(a). First, the government itself referred specifically to the deferred tax amount in Snyder when it asserted that sec. 6402 allowed the IRS to credit the overpayment "to the outstanding tax liability." 630 F. Supp. at 184.

Second, the IRS recently elaborated on the circumstances under which crediting under sec 6402(a) is appropriate. "[I]t has long been the position of the Service and the courts that the Service may credit an overpayment only against a tax which has been formally assessed or for which a statutory notice of deficiency has been issued." CCA 200217005 (Apr. 26, 2002), (citing, e.g., McCarl v. United States ex rel. Leland, 42 F.2d 346, 347 (D.C. Cir. 1930)); cf. Rev. Rul. 2007-52, 2007-37 I.RB. 575 (taking the position that in certain circumstances the IRS may credit under section 6402 even where there is no assessment or notice of deficiency). In Snyder, the IRS had issued a notice of deficiency in 1981 with respect to the estate's tax liability. Under the IRS's own pronouncements, that alone would establish that the entire tax owed by the estate was an "outstanding liability."

Finally, in a case such as Snyder, sec. 6201(a)(1) requires the IRS to assess any liability shown on the tax return within three years of filing, or else the IRS becomes time-barred from assessing and collecting the amount due. Sec. 6501(a). The return in Snyder was filed in 1980, so any assessment of the tax shown on the return would necessarily have occurred well before December 31, 1984, the date on which the IRS purported to credit the refund that had been ordered.

In short, Defendant is just wrong in claiming, with respect to the conditions imposed by sec. 6402(a), that "[o]ne of those conditions – the existence of an outstanding liability against which to credit the overpayment – had not been met on the facts of Snyder." Def. Rep. 10. While there is such a condition, it was clearly met in Snyder. The deferred tax amount still to be paid represented an "outstanding liability" against which the credit could have been taken.

**B. Snyder Refused to Allow a Credit Under Sec. 6402 Because It Would Have Negated the Benefits of the Election Made Under Sec. 6166**

A careful reading of Snyder shows that the court's holding is not that there was no

"outstanding liability" as required for crediting under sec. 6402(a). That requirement unquestionably had been satisfied. Rather, Snyder focused on whether sec. 6402(a) "should apply" or had "proper application" to "a situation where payment of the tax is deferred by law for ten years," when to do so would result in the "inherent injustice" of the denial of "a very valuable right" that Congress intended to grant to the taxpayer. 630 F. Supp. at 184-85. None of the court's discussion of the rights of the taxpayer under sec. 6166 would have been necessary or appropriate if the court had concluded that the attempted credit had failed on technical grounds.[5]

Instead, the Snyder court found that crediting under sec. 6402(a) must give way to Congress's intention to provide certain estates a form of relief, by allowing them to elect under sec. 6166 to have their estate tax payments deferred and made in installments. Here, GE's position is that crediting under sec. 6402(a) must also give way to Congress's intention to provide certain taxpayers an interest computation benefit, by allowing interest on overlapping overpayments and underpayments in equivalent amounts to be calculated under the global interest netting rules contained in sec. 6621(d).[6] Here, a "valuable right" accorded to GE under sec. 6621(d) would be negated if the credit were given its full effect. Snyder thus supports GE's position that interest netting must be applied on the facts here presented.

## II. Interest Netting as Mandated by Sec. 6621(d) Does Not Completely Preclude the IRS Power to Credit Under Sec. 6402

Defendant has also erroneously described GE's position as being that sec. 6621(d) effectively amended sec. 6402(a) by implication so as to preclude crediting altogether. Def. Rep.

[5] The Second Circuit has characterized the holding in Snyder as appropriately "preserving" the taxpayer's "statutory prerogative" to defer payment under section 6166 given the facts of that case. Estate of Shapiro v. Commissioner, 111 F.3d 1010, 1015 (2d Cir. 1997).

[6] Pl. Opp. 10-11 and 14-16.

2. GE's position is that where a taxpayer has properly requested retroactive interest netting, as GE did here, interest netting "shall apply."[7] But that does not mean that the resulting interest computation (as prescribed by sec. 6621(d)) completely precludes the IRS's power to credit. Rather, in GE's view, application of the interest netting rules precludes only one consequence of crediting, namely, the retroactive elimination of both underpayment interest and overpayment interest as contemplated by the application of sec. 6601(f) (first sentence) and sec. 6611(b)(1) when a credit is taken.

In any case where the IRS exercises its power to credit under sec. 6402(a) but the taxpayer is entitled to interest netting under sec. 6621(d), GE's position is that while the underlying principal obligations may be offset by the credit, interest is not to be completely eliminated on a retroactive basis. Rather, under sec. 6621(d) and sec. 6601(f) (second sentence), interest is to be computed so that "the net rate of interest…shall be zero" on any equivalent overlapping underpayment and overpayment amounts, from the beginning of the overlap period to the date on which one or both of the obligations are deemed satisfied.[8] In other words, GE's position is that, where interest netting applies, the credit under sec. 6402(a) is to be treated as having occurred, for both principal and interest computation purposes, on the date the credit is actually scheduled by the IRS. That gives full effect to the offset of principal obligations, while at the same time it precludes the retroactive elimination of interest on both the overpayment and the underpayment amounts.

---

[7] The requirement that retroactive interest netting "shall apply" where certain conditions are met, as they were here, is found in the "Special Rule" contained in sec. 3301(c)(2) of the Internal Revenue Service Restructuring and Reform Act of 1998. See Pl. Opp. Apps. 1 and 2 for the text of the statute.

[8] Pl. Opp. 16-18. Defendant's claim (Def. Rep. 19-20) that, by eliminating interest retroactively, crediting "paradoxically" effectively complies with the requirement in sec. 6621(d) that "the net rate of interest…shall be zero," misconstrues both the purpose of the requirement in sec. 6621(d) and its intended application.

Contrary to Defendant's assertion, GE is not "asking the court to hold that the Commissioner was required to leave a $32 million overpayment sitting in plaintiff's 1979 account – unrefunded and uncredited, and accruing interest – simply in order to trigger § 6621(d)." Def. Rep. at 20. Nor is GE demanding that "*taxpayers* may, at *their* discretion, direct the disposition of overpayments," as Defendant asserts. Id. (italics by Defendant). Rather, GE's position is simply that, where interest netting is applicable, a credit under sec. 6402(a) should be treated, for both principal and interest computation purposes, as a payment made on the date the credit is scheduled. This result gives full effect to sec. 6621(d) and the conforming amendment to sec. 6601(f) (second sentence), by allowing interest to be computed at a net rate of zero for the overlap period.

This approach is also entirely consistent with secs. 6407 and 7422(d), both of which treat the date on which a credit is scheduled as the date the credit becomes operative. Sec. 6407 is explicit in stating that credits are to be treated as occurring on the date scheduled. It provides:

> DATE OF ALLOWANCE OF REFUND OR CREDIT. The date on which the Secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

See also Treas. Reg. sec. 301.6407-1. Similarly, section 7422(d) provides:

> CREDIT TREATED AS PAYMENT.—The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be payment in respect of such tax liability at the time such credit is allowed.

See, e.g., United States v. Swift & Co., 282 U.S. 468 (1931); Parker Hannifin Corp. v. United States, 71 Fed. Cl. 231, 235 (2006). As can be seen, both provisions treat the date on which the credit is scheduled as the operative credit date. That is the position taken by GE here.

GE recognizes that because Congress did not expressly amend sec. 6611(b)(1), there is

some uncertainty as to the application of that provision in this context. Sec. 6611(b)(1) generally cuts off overpayment interest as of the "due date of the amount" (i.e., the due date of the underpayment) against which the credit is taken. (Treas. Reg. sec. 301.6601-1(h)(2)(i), promulgated before the enactment of sec. 6621(d), interprets "due date" as generally the "last day fixed by law or regulations for the payment of the tax…"). GE is not aware of any interpretation of sec. 6611(b)(1) in an interest netting context.

If the overpayment interest cutoff rule of sec. 6611(b)(1) is given effect notwithstanding the applicability of interest netting, it would completely nullify the role and purpose of sec. 6621(d) and lead to the bizarre result that even though underpayment interest would not be cut off because it is preserved by the conforming amendment to sec. 6601(f) (second sentence), overpayment interest would be cut off retroactively. GE believes this seeming lack of symmetry is best addressed by harmonizing the relevant statutory provisions and concluding that, in enacting interest netting, Congress intended that, to the extent equivalent overpayment and underpayment amounts are outstanding for an overlapping period, overpayment interest and underpayment interest are to be computed at the same rate. That is what is meant by sec. 6621(d)'s requirement that "the net rate of interest under this section on such amounts shall be zero for such period."

Defendant argues that there is no way technically in which to accomplish what GE is requesting. Def. Rep. 3, 9-12. In Defendant's view, the interplay of the relevant statutory provisions makes it impossible to satisfy the interest netting requirements without first knowing whether the IRS will be crediting a taxpayer's overpayment against the taxpayer's underpayment or whether it will instead send the taxpayer a refund check in the amount of the overpayment. If the IRS chooses to credit, Defendant's argument runs, sec. 6601(f) (second sentence) has no

meaningful role to play. Instead, sec. 6601(f) (first sentence) would cause the complete elimination of underpayment interest (albeit retroactively). That, in turn, would preclude the possibility of there being both overpayment interest and underpayment interest accruing for the same period, as required for interest netting purposes. For that reason alone, Defendant suggests that GE's position must be rejected.

Defendant's argument is specious. Sec. 6621(d) provides for interest netting "[t]o the extent that, for any period, interest is payable under subchapter A [dealing with underpayment interest] and allowable under subchapter B [dealing with overpayment interest] on equivalent underpayments and overpayments by the same taxpayer…." Those are the only statutory conditions. It is well-settled that interest accrues day-by-day, until the underlying obligation is satisfied. See Treas. Reg. sec. 301.6621-1(c)(1); see also Estate of Piper v. United States, 9 Cl. Ct. 475, 478 (1986). Therefore, from the due date of a return (or subsequent event) giving rise to an underpayment, there will be underpayment interest accruing day-by-day, until the underpayment obligation is satisfied by the taxpayer. Similarly, from the due date of a return (or subsequent event) giving rise to an overpayment, there will be overpayment interest accruing day-by-day, until the overpayment obligation is satisfied in favor of the taxpayer.

Thus, for any taxpayer with both an underpayment and an overpayment outstanding, there will definitely be accrued underpayment interest "payable" by the taxpayer and accrued overpayment interest "allowable" to the taxpayer -- until a decision is finally made on how the cross-obligations will be satisfied. To the extent the overpayment and underpayment obligations are outstanding for an overlapping period of time and are equivalent in amount, all the conditions

for the application of interest netting under sec. 6621(d) will necessarily have been satisfied.[9]

That is precisely the situation here. In December 1999, GE made a timely request for interest netting for its 1979 and 1986-1987 years. The crediting occurred in 2000. At that time, there was both interest "payable" by GE and interest "allowable" to GE for an overlapping period on equivalent amounts of underpayment and overpayment, respectively. All the conditions for interest netting thus had been satisfied.

## CONCLUSION

As demonstrated above and in GE's Opposition to Defendant's Motion to Dismiss, the Complaint states a claim upon which relief can be granted, specifically that GE was entitled to have interest netting apply in the 2000 Interest Computations. Defendant has failed to establish that it is entitled to judgment on this point as a matter of law.

Respectfully submitted,

*/s/ Jerome B. Libin*

Jerome B. Libin (Attorney of Record)
James V. Heffernan
Mary E. Monahan
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-0100
FAX (202) 637-3593

Counsel for Plaintiff
General Electric Company and Subsidiaries

Of Counsel:

Laurence A. Hoch
GENERAL ELECTRIC COMPANY
GE Corporate Taxes
12 Corporate Woods Blvd., 3rd Fl.
Albany, NY 12211
(518) 433-4349

August 27, 2008

[9] Defendant itself acknowledges that interest netting applies when a taxpayer "had both an *over*payment with respect to one year outstanding at the same time the same taxpayer had an *under*payment outstanding with respect to a different year." Def. Rep. 3 (italics by Defendant).