# In the United States Court of Federal Claims

No. 06-489T

(Filed: February 13, 2009)

* * * * * * * * * * * * * * * * * * * * * * * *

GENERAL ELECTRIC COMPANY
and SUBSIDIARIES,

                 *Plaintiff,*

v.

THE UNITED STATES,

                 *Defendant.*

Corporate Income
Tax, Sections 6402(a),
6621(d), 6611(b)(1),
and 6601(f), Interest
Netting, Crediting

* * * * * * * * * * * * * * * * * * * * * * * *

    *Jerome B. Libin*, Washington, DC, with whom were *James V. Heffernan*, and *Mary E. Monahan*, for plaintiff. *Laurence A. Hoch*, of counsel.

    *William C. Rapp*, United States Department of Justice, Tax Division, Court of Federal Claims Section, Washington, DC, with whom were *Nathan J. Hochman*, Assistant Attorney General, *Steven I. Frahm*, Acting Chief, Court of Federal Claims Section, and *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, for defendant.

## OPINION

BRUGGINK, *Judge*

    Pending in this tax case is defendant's motion to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC").[1]  The case poses a novel question concerning the interplay between the Internal Revenue

---

[1] As defendant's motion to dismiss under RCFC 12(b)(6) was filed after defendant filed the answer on October 30, 2006, the court elects to construe the defendant's motion to dismiss under RCFC 12(b)(6) as a motion for judgment on the pleadings under RCFC 12(c), noting that the legal standard applied under RCFC 12(c) is the same as for a motion to dismiss under RCFC 12(b)(6). *Peterson v. United States*, 68 Fed. Cl. 773, 776 (2005).

Service's authority to credit a tax overpayment against an outstanding tax liability under 26 U.S.C. § 6402(a) (2000) and provisions regarding the application of interest netting contained in 26 U.S.C. § 6621(d).[2]

The motion has been fully briefed.  In addition to regular briefing, the parties were ordered to file a joint demonstrative that was intended to explain certain interest calculations involved in the case.  On October 3, 2008, the parties filed the joint demonstrative, which was composed of eight charts.  The parties were able to agree that Charts 1 through 5 accurately depicted the proper computation of interest in the hypothetical situations depicted, although they did not agree that all of the principles of interest computation contained in the charts are relevant to the determination of the case.  Charts 6 through 8, however, were submitted solely by plaintiff and not agreed to by defendant.

On November 17, 2008, the court heard oral argument solely with respect to the joint demonstrative.  At oral argument, plaintiff was directed to file a supplemental demonstrative explaining plaintiff's view of certain interest calculations.  This supplemental demonstrative was filed on December 2, 2008.  Charts 1 - 5 and 6A and 8A from the two demonstratives are attached as Appendix A.  A second oral argument was held on February 4, 2009 addressing the merits of the defendant's motion.  Accordingly, the case is now ready for disposition.  For the reasons set out below, we grant defendant's motion.

## BACKGROUND[3]

In April of 1992, the Commissioner of Internal Revenue ("Commissioner") mailed a statutory notice of deficiency to General Electric Company ("GE") regarding its corporate income tax for the 1979 taxable year. GE subsequently disputed this deficiency by filing a petition for a redetermination with the United States Tax Court.

In September 1999, the Tax Court entered a decision determining that GE had an overpayment for the 1979 taxable year in the amount of $37,170,101, exclusive of interest.  At the same time, however, GE and the Internal Revenue Service ("IRS") reached an agreement that GE was also

---

[2] All subsequent code citations will be to Title 26 for the applicable year.

[3] These facts are taken from the complaint.

liable for deficiencies of its corporate income tax for the years 1986 and 1987 in the amounts of $70,617,583 and $401,813,144 respectively. This agreement was memorialized by execution of a Form 870-AD, "Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment."

Also in October 1999, cash bonds which had been posted in 1987 and 1991 in order to stop the running of interest on the underpayments for 1986 and 1987 were converted into payments of tax and interest for the 1986 and 1987 underpayments.  On December 21, 1999, GE filed Form 843 requesting that, under Section 6621(d) and Section 3301(c)(2) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105-206, § 3301(a), 112 Stat. 685, 741, interest netting be applied to periods of overlapping overpayments and underpayments, including between March 15, 1987 and February 22, 1991 and between March 15, 1988 and February 22, 1991.

In July 2000, the IRS performed interest computations reflecting its intended final resolution of GE's overpayments and underpayments for the various years in question.  Pursuant to these computations, the IRS would post an abatement to plaintiff's income tax account for 1979 in the amount of the tax overpayment that had been determined by the Tax Court, $37,170,101.  In addition, $3,772,301 in deficiency interest that had previously been assessed would be posted as an abatement to the 1979 account, along with overpayment interest in the amount of $43,993,361.  These abatements and credits to the 1979 account resulted in an overpayment for 1979 in the total amount of $84,935,763.  In August of 2000, these abatements and credits were actually posted.  The result was that the overpayments were credited to GE's 1986 and 1987 accounts in partial satisfaction of the tax underpayments for these taxable years: $32,267,222 was applied to the 1986 account and $52,668,541 was applied to the 1987 account.

Plaintiff claims that the IRS's crediting of the 1979 overpayment, including interest, against plaintiff's income tax liability for the 1986 and 1987 taxable years was "null, void and ineffective." (Complaint ¶ 29.)  Therefore, because the 1979 overpayment was improperly credited to the 1986 and 1987 tax accounts, plaintiff argues that it is entitled to a refund of overpayment for

the 1979 taxable year in the amount of $37,170,101 plus statutory interest.[4] If the court grants defendant's motion for judgment on the pleadings, the entire complaint fails.

## DISCUSSION

Defendant argues that it credited GE's 1979 overpayment against GE's 1986 and 1987 underpayments under the authority provided by Section 6402(a).  Section 6402(a) gives the Commissioner discretion to credit a taxpayer's overpayment of tax against that same taxpayer's outstanding underpayment of tax:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

Section 6402(a).  The credit is therefore, dollar for dollar, the equivalent of a payment of a tax liability by the taxpayer.  Neither the taxpayer nor the IRS are left owing anything to the other, at least to the extent of exact overlap.  Chart 2 of the joint demonstrative illustrates the effect of crediting in a hypothetical scenario approximating the facts of this case. After a final determination of the overpayment amount owed to the taxpayer and the underpayment amount owed to the IRS, the IRS applies, or credits, the taxpayer's overpayment against the contemporaneous and equivalent underpayment, resulting in the elimination of the balance in both accounts and retroactively eliminating the subsequent interest for both the overpayment and the underpayment during the period of what had been an overlap.

---

[4] In Count II, plaintiff claims that it has a contract with the United States, and that the Government has breached this contract with plaintiff by crediting the 1979 overpayment, plus interest, against portions of the 1986 and 1987 underpayments.  In Count III, plaintiff claims that, as a result of the crediting by the IRS of the 1979 overpayment, plaintiff has not been paid the amount of interest on the 1979 overpayment which it would have been paid had the crediting not taken place.  We do not view the additional counts as creating additional issues.

4

The second IRC provision implicated in this case, Section 6621(d), institutes a net interest rate of zero on a taxpayer's simultaneous overpayments and underpayments. This is advantageous because, under the IRC, corporate taxpayers are assessed a higher interest rate on their tax underpayments than the interest rate they earn on their tax overpayments. Sections 6621(a)(2), 6621(c). Section 6621(d) reads:

> To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

The application of this zero net interest rate to simultaneous, or overlapping, tax overpayments and underpayments "for the purpose of interest equalization is referred to as 'global interest netting.'" *Fed. Nat'l Mortgage Ass'n v. United States*, 69 Fed. Cl. 89, 90 (2005).

This section was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105-206, § 3301(a), 112 Stat. 685, 741. *Fed. Nat'l Mortgage Ass'n*, 69 Fed. Cl. at 90. In enacting this section, the legislature also included an uncodified "special rule" which permitted taxpayers "to apply Section 6621(d) to periods prior to the statute's effective date of July 22, 1998, 'subject to any applicable statute of limitations not having expired with regard to either a tax underpayment or a tax overpayment.' *Id*. (citing Pub.L. No. 105-206, § 3301(c)(2), 112 Stat. 685, 741 (1998), as amended by Pub.L. No. 105-277, § 4002(d), 112 Stat. 2681-906 (1998)).

As applied to a hypothetical scenario approximating the facts of this case, the difference in interest rates for corporate taxpayers is illustrated by Chart 1 of the joint demonstrative. In Chart 1, absent crediting by the IRS or the application of Section 6621(d), the taxpayer's overpayment accrues interest at the lower interest rate while, simultaneously, the taxpayer's underpayment accrues interest at the higher interest rate. When there are overlapping periods of equivalent tax underpayments and overpayments, however, Section 6621(d) entitles a taxpayer to the application of a net zero interest rate.

The parties were also able to agree to at least two scenarios in which interest netting under Section 6621(d) is applicable. These are illustrated graphically in Charts 3 and 4 of the joint demonstrative. Chart 3 illustrates that

interest netting is applicable when an audit of a taxpayer's returns for a number of taxable years is conducted by the IRS revealing that there is an overpayment by a taxpayer for a certain taxable year and that there is also a simultaneous underpayment by that same taxpayer for a different taxable year in an equivalent amount. Although the overpayment and underpayment occur in separate taxable years, the periods in which the overpayment and underpayment accrue interest are concurrent. In this first scenario, however, the overpayment is discovered in the course of the auditing process before the underpayment, and the overpayment amount is refunded by the IRS before the underpayment is discovered. The IRS is therefore unable to credit the overpayment amount under Section 6402(a) against the underpayment amount because the overpayment has already been refunded along with interest accrued at the lower overpayment rate. Because crediting is unavailable due to the prior refund to the taxpayer of the overpayment amount plus overpayment interest, the IRS will not credit but instead will apply Section 6621(d) interest netting, by reducing the higher interest rate for the underpayment to equal the lower interest rate for the overpayment for the period in which the overpayment and underpayment overlapped. Thus, the taxpayer is afforded relief from the unfavorable interest rate differential. The taxpayer will only have to pay the underpayment amount plus the lower interest rate on the equivalent underpayment amount.

In the second scenario, illustrated in Chart 4, the payment of the refund of the overpayment amount and the satisfaction of the underpayment amount are reversed chronologically. Again, in this scenario, an audit is conducted revealing an underpayment by a taxpayer for a certain taxable year and a simultaneous equivalent overpayment by that same taxpayer for a different taxable year. The overpayment and underpayment periods overlap. In this scenario, however, the underpayment amount, along with the higher underpayment interest, is satisfied with a payment by the taxpayer before the overpayment is discovered in the auditing process. Once again, because crediting is unavailable due to the prior satisfaction of the underpayment amount along with the accrued underpayment interest, the IRS will apply interest netting by raising the lower interest rate for the overpayment to equal the higher interest rate for the underpayment for the period in which the overpayment and underpayment overlapped. The taxpayer is thus owed a refund of the overpayment plus interest, during the period in which the overpayment and underpayment overlapped, at the higher underpayment rate which will ultimately make up for the previous payment in satisfaction of the underpayment interest that accrued at the higher rate.

In most circumstances, the effect of either crediting or netting would be

the same. Crediting would be available when the existence of offsetting balances is discovered *prior* to both a refund and a payment by the taxpayer. Under crediting, the outstanding positive balance is eliminated, dollar for dollar, by applying it to the outstanding unpaid balance for another tax year. The result is that there is no outstanding balance against which interest would accrue in terms of either over or under payment. Interest netting, however, would apply when there has been either a refund by the IRS of the overpayment or a payment of an underpayment prior to the discovery of the offsetting balances. If crediting occurs, however, the fact that it makes interest netting unavailable, or, indeed, unnecessary, would be inconsequential. The effect on the taxpayer would be the same in either circumstance. Consequently, the court pressed the parties, and particularly the plaintiff, to explain why the use of crediting in this instance was prejudicial to plaintiff.

Plaintiff suggests that its view of the law is potentially advantageous because of a 2006 redetermination of plaintiff's 1986 and 1987 accounts that resulted in a reduction in tax liability for those years. Plaintiff appears to argue that plaintiff's posting of cash bonds should alter the landscape of the interest calculations in 2000 and render crediting momentarily disadvantageous to plaintiff.[5] In plaintiff's response to defendant's motion to dismiss, plaintiff states:

> In a number of circumstances, there is a difference between interest netting and crediting. In the instant case, the difference is significant because of the fact that GE posted non-interest bearing cash bonds at periodic intervals to stop the running of underpayment interest pending a final resolution of the disputed issues. Under interest netting, the cash bonds could be applied to pay not only the underpayments themselves, but also the accrued underpayment interest, thus ensuring that the cash bonds would be used to their maximum extent. On the other hand, under crediting, the cash bonds would not be fully utilized, thereby adversely affecting GE.

(Pl. Br. of Mar. 10, 2008, at 4.) Plaintiff's submission of Charts 6 through 8 of the joint demonstrative appear to be predicated on the relevance of the cash bonds

---

[5] The IRC and IRS regulations permit the posting of non-interest bearing cash bonds to stop the running of underpayment interest. A graphical depiction of the functioning of cash bonds is included in the joint demonstrative as Chart 5.

to the case.  At oral argument on November 17, 2008, however, plaintiff's counsel seemed to indicate that the cash bonds were not necessarily integral to a determination of the case and agreed to submit the supplemental demonstrative composed of alternative versions of Charts 6 through 8 that did not take into account the existence of the cash bonds but that depicted a reduction in tax liability for the 1986 and 1987 accounts.

The supplemental demonstrative appears to present basically the same numbers as Charts 6 through 8 of the joint demonstrative but absent the cash bonds.  Charts 7A and 8A contain the same basic numbers as Charts 7 and 8, in which plaintiff presents the overpayment and underpayment as unequal amounts due to a reduction of tax liability in the 1986 and 1987 accounts resulting from a 2006 judicial redetermination of these tax years.  In Chart 7A, the overpayment exceeds the underpayment by 10% due to the judicial redetermination held subsequent to the interest computations in 2000.  Thus, after the overpayment is credited against the underpayment, according to Section 6402(a), 10% of the overpayment principal remains and begins to accrue interest at the overpayment rate after the credit is made.  The 10% remaining overpayment principal begins to accrue interest only after the credit has been made because, with crediting under Section 6402(a), the credit is treated as a payment of tax by the taxpayer and any subsequent finding of an overpayment of tax due to the credit is treated as an overpayment arising at the time of the credit.  Although defendant denies the legal accuracy of this chart and points to Chart 2 as an accurate depiction of the current case, plaintiff advances Chart 7A as a representation of defendant's view of crediting given the judicial redetermination of the 1986 and 1987 accounts that occurred subsequent to the 2000 interest computations.

In Chart 8A, plaintiff presents its view of interest netting without the cash bonds in light of the 2006 judicial redetermination of the 1986 and 1987 accounts. Similar to Chart 7A, Chart 8A shows the overpayment amount exceeding the underpayment amount by 10% for the period of overlap due to a *nunc pro tunc* reduction of tax liability resulting from the 2006 judicial redetermination.  Under plaintiff's view of interest netting, Chart 8A depicts both the larger overpayment amount and the lower underpayment amount as accruing interest at the same overpayment rate during the period of overlap.  Thus, after the credit and the 2000 interest computations, the overpayment exceeds the underpayment by 10% of the overpayment principal plus the accrued overpayment interest on this 10% of principal.  Unlike Chart 7A, where the credit is treated as an overpayment of tax when the credit is made in 2000, Chart 8A shows the 10% overpayment remaining after the 2000 interest computations as an overpayment existing at the beginning of the overlap period, which accrues overpayment interest for the entire period of

overlap under Section 6621(d). Essentially, plaintiff contends that a 2006 judicial redetermination, which resulted in the reduction of tax liability for the 1986 and 1987 accounts, has a *nunc pro tunc* effect on the 1986 and 1987 accounts. This *nunc pro tunc* reduction should control the computation of interest over and against the credit and interest computations in 2000. Plaintiff would therefore benefit from the overpayment interest on the 10% overpayment remaining after the 2000 credit, which would accrue during the overlap period.

At the end of the day, the advantage to plaintiff of using interest netting in lieu of crediting remains unclear to the court. The parties gave up trying to explain why it mattered, however, and urged the court to address the legal question in the abstract. We therefore take it on faith that the outcome matters.

Defendant phrases the issue in the following way:

> In the case of an overpayment with respect to plaintiff's tax year 1979, may the Internal Revenue Service credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of plaintiff with respect to its tax years 1986 and 1987?

(Def. Br. of Feb. 7, 2008, at 1.) The parties understand this to mean that, if the IRS properly exercised its discretion in 2000 to credit plaintiff's outstanding overpayment for tax year 1979 to tax years 1986 and 1987, then the effect would be to eliminate all interest on both the overpayment and underpayment for the overlap period and thus preclude the application of interest netting.

Plaintiff asserts that the crediting in 2000 of the 1979 overpayment to the tax liabilities for 1986 and 1987 was improper or unlawful because plaintiff previously had applied for and was therefore entitled to interest netting under Section 6621(d) and the accompanying "special rule." Plaintiff argues that the provision for interest netting in Section 6621(d) is not only mandatory in situations like the two scenarios depicted in Charts 3 and 4 but is mandatory in all situations in which a taxpayer's overpayments and underpayments overlap. Essentially, plaintiff argues that the interest calculation provision in Section 6621(d) trumps, and thus amends, the crediting authority dispensed in Section 6402(a) because Section 6621(d) was adopted more recently than Section 6402(a). It therefore implicitly limits the authority of the Commissioner to credit overpayments against underpayments. Plaintiff provides no real support for its position, other than the

fact that Section 6621(d) uses the term "shall"[6] while Section 6402(a) uses the term "may."[7]   Plaintiff argues that "shall" is a mandatory term in the interest computation statute which controls the interpretation of the permissive term, "may," in Section 6402(a), a crediting authorization statute.

Defendant replies that Section 6621(d) only addresses the calculation of interest in situations of overlapping overpayments and underpayments and in no way addresses the authority of the Commissioner to credit an overpayment against an outstanding tax liability.   If the Commissioner chooses to credit an overpayment, that ends the matter.   There is therefore no more room for interest netting to apply.

Defendant argues that the chronology of events supports its position. While the request for interest netting occurred prior to the actual posting of the credits, the change in plaintiff's circumstances that made netting useful to plaintiff did not occur until much later.   In other words, according to defendant, not only would interest netting have to "trump" the Commissioner's ability to apply crediting at the time the credit is taken (here, 2000), it would have to continue to do so indefinitely into the future at the insistence of the taxpayer, retroactively canceling the credits and causing a recalculation of liabilities.

In effect, plaintiff sets Section 6621(d) and Section 6402(a) at odds, framing the question of crediting in this case as a choice between crediting under Section 6402(a) or a refund and interest netting under Section 6621(d). We find this argument unpersuasive because it presumes a nonexistent irreconcilable conflict between the provisions.

The two sections are not in conflict, if it is understood that, as a practical matter, there is no room for the operation of Section 6621(d) if the Commissioner has, through crediting, eliminated the dueling balances.   Section 6621(d) then, operates as a safety net, needed only if there is no prior crediting because there has been a refund or tax payment.   Thus there is no necessary conflict in the operation of the two sections.   The conflict only arises if one assumes, like plaintiff, that the

---

[6] "To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts *shall* be zero . . . ." Section 6621(d) (emphasis added).

[7] "In the case of any overpayment, the Secretary, within the applicable period of limitations, *may* credit . . . ." Section 6402(a) (emphasis added).

Commissioner's discretion to credit disappears if plaintiff elects *at any time*, to insist on interest netting.

Section 6621(d) is a provision relating solely to the calculation of interest. It is one of a skein of provisions in Section 6621 outlining the methods of calculating interest in different situations. It does not address issues related to the underlying tax liability. The term "shall" is used throughout Section 6621 and should be viewed in the context of the other interest calculation provisions of Section 6621 and not extended to conflict with other unrelated provisions of the IRC. As defendant points out, it is difficult to see how Congress could have drafted Section 6621(d) so as to require a standard for interest calculation in a given situation in contrast to other possible methods of calculation without using the term "shall." If there is an outstanding balance of equal liabilities and overpayments, then interest netting caps the maximum amount of interest owed by either taxpayer or the government. "Shall" is the only word which works in that context. But, there is no overlap of outstanding balances in the event the Commissioner has elected to use crediting, hence there is no room for operation of the interest cap and no conflict.

In its surreply, plaintiff concedes that its view of the application of interest netting is not necessarily contrary to the authority of the Commissioner to credit the underlying tax payment, if not the interest, of an overpayment against an outstanding tax liability. Although plaintiff maintains that the application of interest netting under Section 6621(d) must alter the calculation of interest for the credit in this case, there is no dispute that the crediting of principal under Section 6402(a) is not affected by the interest calculation provision in Section 6621(d). Given the degree of discretion to credit the Commissioner has in Section 6402(a), and the concession by the plaintiff that Section 6621(d) is not necessarily in tension with the Commissioner's authority to credit the underlying tax liabilities, the court finds that Section 6621(d) does not amend Section 6402(a) so as to limit the Commissioner's discretion to credit anoverpayment against an outstanding tax liability.

Section 6402(a) gives the Commissioner broad authority to credit the 1979 overpayment amount against the 1986 and 1987 underpayment amounts and thereby to eliminate all interest on these accounts to the extent of the credit amount.[8] As illustrated in Chart 2 of the joint demonstrative, the crediting of the

---

[8] *See Pettibone Corp. v. United* States, 34 F.3d 536, 538 (7th Cir.1994)
(continued...)

1979 overpayment to the 1986 and 1987 underpayments eliminates the underpayments in the 1986 and 1987 accounts in the amount of the 1979 overpayment and thus, for the purpose of the final interest calculations, retroactively eliminates all interest on the 1979, 1986, and 1987 accounts for the period during which the accounts overlap.

Plaintiff, in its surreply, posits a different regime for the calculation of interest when a credit is made by the Commissioner of an overpayment against an outstanding underpayment and when the overpayment in question overlaps in time with the underpayment. This regime is depicted graphically in Chart 6A of the supplemental demonstrative. According to plaintiff, when an overpayment and underpayment overlap in time and therefore meet the requirements for interest netting under Section 6621(d), the Commissioner may still credit the overpayment against the unpaid balance, but may not eliminate the accumulated interest for the overlap period. In the current case, this would mean that, for the purpose of interest calculation, the credit of the 1979 overpayment should be treated as taking place in August of 2000 when the actual credit was applied and not as having taken place on March 15, 1987 and March 15, 1988 when the 1986 and 1987 underpayments became outstanding. Plaintiff bases this interpretation on the use of "shall" in Section 6621(d) as well Section 6601(f), which reads:

> If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment. *The preceding sentence shall not apply to the extent that section 6621(d) applies.*

(Emphasis added.)

---

[8](...continued)
(stating that Section 6402(a) "leaves to the Commissioner's discretion whether to apply overpayments to delinquencies or to refund them to the taxpayer"); Estate of Bender v. Commissioner, 827 F.2d 884, 887 (3d Cir.1987) (stating that discretionary authority to credit under Section 6402(a) "rests exclusively with the IRS"); *Georgeff v. United States*, 67 Fed. Cl. 598, 608 (2005) ("From the plain language of the statute, the IRS has no obligation to credit any individual's tax overpayment to specific preexisting outstanding tax liabilities upon the taxpayer's request. The statute, 26 U.S.C. § 6402, gives the IRS the discretionary authority to credit tax overpayments to any tax liability.").

Section 6601(f) provides the basis for cutting off interest on an underpayment when an overpayment has been credited against that underpayment. It is the parallel provision to Section 6611(b)(1), which cuts off the accrual of overpayment interest as of the due date of the underpayment against which it is credited.  The above italicized sentence does not, however, appear in Section 6611(b)(1).

The second sentence of Section 6601(f) was inserted as a "conforming amendment" to the statute at the same time as the enactment of Section 6621(d), and plaintiff argues that, by this amendment, Congress intended for underpayment, and, presumably, overpayment, interest to continue to accrue despite a credit of the overpayment principal.  Thus, plaintiff interprets Section 6621(d) and Section 6601(f) as creating the regime it has in mind.

The court is not persuaded that plaintiff's interpretation of Sections 6621(d) and 6601(f) is correct.  First, Section 6601(f) deals solely with the effect of crediting on underpayment interest, cutting off underpayment interest retroactively "for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment."  Section 6611(b)(1).  Section 6611(b)(1) of the IRC governs the effect of crediting on overpayment interest and usually cuts off overpayment interest as of the "due date of the amount," or the due date of the underpayment, against which the credit is applied.  26 U.S.C. § 6611(b)(1); Treas. Reg. § 301.6601-1(h)(2)(I).

Section 6611(b)(1) was not amended by Congress along with Section 6601(f) as would be expected if one were to accept plaintiff's interpretation. Therefore, plaintiff's regime does not hang together, when one looks at Section 6601(f) in combination with Section 6611(b)(1).   Indeed, if plaintiff's interpretation of 6601(f) is used in combination with the plain language of Section 6611(b)(1), this would require that, when the Commissioner credits under Section 6402(a) an overpayment against an underpayment and the overpayment and underpayment overlap, interest on the overpayment would be cut off retroactively at the due date of the underpayment against which the overpayment was credited, but incongruously, underpayment interest would continue to accrue.  Plaintiff is thus forced to argue for an implied amendment to yet another IRC provision, a provision that the legislature would have almost certainly overtly amended had it envisioned the regime posited by plaintiff.  Thus, we agree with defendant that the "conforming amendment" to Section 6601(f) is intended to make it clear that a taxpayer may not have the benefit of both the zero net interest rate through Section 6621(d) and the elimination of underpayment interest through Section 6601(f).

In addition, the fact that there is no indication in the statutes in question as to the proper interest rate to be used in the calculation of interest under plaintiff's proposed regime militates against the validity of the plaintiff's position. Certainly, there is no indication in the statutes of whether to use the underpayment rate or the overpayment rate. At oral argument on November 17, 2008, plaintiff's counsel indicated that the court, or perhaps the IRS, could choose either to apply the overpayment rate or the underpayment rate at random. This, however, leaves Section 6621(d), an interest computation statute, without a regular method by which to determine the applicable rate.

Again, there is no mention whatsoever in the legislative history of Section 6621(d) or the conforming amendment to Section 6601(f) of anything approaching the radical change in the authority of the Commissioner to make credits or of the regime of interest calculation proposed by plaintiff. Considering that the plaintiff's interpretation of Section 6621(d) and Section 6402(a) would become the present standard for credits by the Commissioner of an overpayment against underpayment, when the overpayments and underpayments overlap, this omission is striking. It suggests that plaintiff's construction was not within Congress' intent. For the foregoing reasons, the court finds that the Commissioner has the full authority and discretion under Section 6402(a) to credit the 1979 overpayment against the 1986 and 1987 underpayments and to compute interest retroactively in accordance with Section 6611(b)(1) and the first sentence of Section 6601(f). Sections 6621(d) and the second sentence of Section 6601(f) do not limit the discretion of the Commissioner to make such a credit and to compute interest accordingly. Thus, the Commissioner's credit and interest computations in 2000 are upheld.

## CONCLUSION

The court finds that the Commissioner's crediting of the 1979 overpayment against the outstanding 1986 and 1987 underpayment amounts was proper under Section 6402(a) of the IRC and was not limited by Sections 6621(d) and 6601(f). Accordingly, defendant's motion is granted. The clerk is directed to dismiss the complaint with prejudice pursuant to RCFC 12(c).

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge

14

APPENDIX A



# Basic Interest Computations
## No Crediting or Netting and No Bond

Chart 1



# Interest Computation Where Underpayment is Satisfied By Crediting of Overpayment

1979 Tax Year

1986 Tax Year

An overpayment of $100,000 for 1979 arises on 1/1/04 and on 1/1/07 is credited against an underpayment of $100,000 for 1986 that arose on 1/1/04.

1/1/04 — Overpayment $100,000 / Underpayment $100,000

1/1/05 — Overpayment $100,000 / Underpayment $100,000

1/1/06 — Overpayment $100,000 / Underpayment $100,000

1/1/07 — Overpayment $100,000 / Underpayment $100,000

Crediting on 1/1/07 eliminates both overpayment interest and underpayment interest as of 1/1/04

$100,000 is transferred from the 1979 account to the 1986 account.

Plaintiff has joined Defendant in submitting this chart because it depicts how Defendant would apply crediting if it prevails in the pending case.

Chart 2





# Interest Netting Where Underpayment is Satisfied Before Overpayment Is Refunded

Chart 4





# Interest Netting Where Overpayment Is Used to Satisfy Underpayment – No Bond

**1979 Tax Year**

An overpayment of $100,000 for 1979 arises on 1/1/04.

**1986 Tax Year**

An underpayment of $100,000 for 1986 arises on 1/1/04.

| | 1/1/04 | 1/1/05 | 1/1/06 | 1/1/07 |
|---|---|---|---|---|
| Overpayment | $100,000 | $100,000 / Acc. Interest $2,023 | $100,000 / Acc. Interest $5,668 | $100,000 / Acc. Interest $11,093 |
| Underpayment | $100,000 | $100,000 / Acc. Interest $2,023 | $100,000 / Acc. Interest $5,668 | $100,000 / Acc. Interest $11,093 |

$11,093 is transferred from the 1979 account to fully satisfy the amount owed in the 1986 account.

When interest netting applies, IRS practice is to satisfy the statutory requirement that the "net rate of interest ...shall be zero" on equivalent underpayment and overpayment amounts by reducing the underpayment rate to equal the overpayment rate during the overlap period, as is done here. Alternatively, in appropriate cases, the overpayment rate could be increased to equal the underpayment rate during the overlap period.

See notes on Chart 6A, next page.

Chart 6A



# Effect of Crediting In Light of Reduction of Underpayment – Overpayment Exceeds Corrected Underpayment – No Bond

See notes on Chart 7A, next page.

Chart 7A



# Effect of Interest Netting In Light of Reduction of Underpayment – Overpayment Exceeds Corrected Underpayment – No Bond

**1979 Tax Year**

Overpayment $100,000 — 1/1/04

Acc. Interest $2,023 | Overpayment $100,000 — 1/1/05

Acc. Interest $5,668 | Overpayment $100,000 — 1/1/06

Acc. Interest $11,093 | Overpayment $100,000 — 1/1/07

Before the 1986 underpayment was reduced, $11,093 had been transferred from the 1979 account to the 1986 account.

**1986 Tax Year**

On 1/1/08, the taxpayer prevails on a disputed issue, causing the original 1986 underpayment of $100,000 (shown on Chart 6A) to be reduced to $90,000.

Underpayment $90,000

Acc. Interest $1,821 | Underpayment $90,000

Acc. Interest $5,101 | Underpayment $90,000

Acc. Interest $9,984 | Underpayment $90,000

Acc. Interest $628 | Overpayment $11,109 — 1/1/08

On 1/1/08, the taxpayer would receive a total of $11,737.

Under netting, the $100,000 overpayment and $11,093 of accrued interest in the 1979 account would have been applied to satisfy the 1986 underpayment of $100,000 and accrued interest of $11,093 (as shown on Chart 6A) on 1/1/07. Since the 1986 underpayment was later reduced from $100,000 to $90,000, accrued underpayment interest was reduced from $11,093 to $9,984. The result is an excess amount of $11,109 in the 1986 account. That amount became an overpayment for 1986 as of 1/1/07. It accrues interest at the overpayment rate from that date until paid to the taxpayer.

See notes on Chart 8A, next page.

Chart 8A